STATE OF IOWA, Appellee, v. FRANK DANGELO, Appellant.

CRIMINAL LAW: New Trial—Incompetency of Attorneys. The
1  incompetency of an attorney, voluntarily employed by the accused, is not ground for a new trial when the incompetency is not marked, when no want of fidelity on the part of the attorney appears, and when a conviction would probably have followed a defense by a more skilled practitioner.

CRIMINAL LAW: Trial—Conduct of Court—Intimating Guilt of
2  Accused. Remarks of the court reviewed, and held not to intimate that the accused was guilty, nor to assume that the jury would convict accused.

CRIMINAL LAW: Trial—Course and Conduct in General—Excluding Emotional Witness. Mere emotion on the part of the wife
3  of the deceased in a prosecution for murder is no ground for excluding the wife from the court room.

CRIMINAL LAW: Trial—Conduct of Court—Inferring Truthfulness of Testimony. A statement by the court to the effect that
4  a certain witness "has testified *in truth* that he did not know," etc., is, while unfortunate, nonprejudicial, in view of the fact that the testimony of the witness on the point in question was undisputed.

CRIMINAL LAW: Trial—Course and Conduct in General—Warning Witness against Incrimination. It is fit and proper for the court to apprise a codefendant, not on trial but offered as a witness, of his right of nonincrimination.

CRIMINAL LAW: Trial—Course and Conduct in General—Bailiff as Witness. The mere calling as a witness of the bailiff who has the custody of the jury is nonprejudicial, especially when only preliminary questions were asked.

CRIMINAL LAW: Trial—Conduct of Counsel—Seeking Undue Advantage in Presenting Witnesses. Attempt by the county attorney to have a witness testify without the State's being bound thereby in event the testimony was unfavorable to the State, is nonprejudicial when the witness is withdrawn without being questioned.

CRIMINAL LAW: Evidence—Issuable and Relevant Facts—Non-Contested Fact. Error may not be predicated on the exclusion of documentary evidence of a fact which stands unquestioned and already fully proven by oral evidence.

CRIMINAL LAW: Trial—Conduct of Counsel—Offer of Irrelevant, Noninflammatory Testimony. The mere offer of irrelevant but noninflammatory testimony does not constitute reversible error.

WITNESSES: Credibility—Cross-Examination—Manner of Living Pursued by Witness. The questionable manner of living pursued by a witness may be inquired about on cross-examination, as bearing on credibility.

TRIAL: Reception of Evidence—Reception without Objection—Gambling on Effect. A party may not deliberately gamble on the effect of testimony—may not allow its introduction without objection, with the purpose in view of retaining it if favorable, and moving its exclusion if unfavorable.

*Appeal from Appanoose District Court.*—FRANCIS M. HUNTER, Judge.

MARCH 6, 1918.

THE accused, Frank Dangelo, with others, was indicted for murder in the first degree. He was first put on trial, and convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for life. He appeals.—*Affirmed.*

*Wilson & Smith,* for appellant.

*H. M. Havner,* Attorney General, and *F. C. Davidson,* Assistant Attorney General, for appellee.

LADD, J.—Northwest of, but not far from, Centerville was a ball park, and adjacent thereto a hall, at which dances, attended by Americans and Italians, frequently occurred. In the evening of June 1, 1916, Pearl Traxler, then operating an automobile livery at Cincinnati, James Richmond, an employee, Clarence and Silas Thomas, and John Stevens, reached this hall about 9 o'clock. The defendant, Charles Rove, Roy Nofio, John Tolimelio, and Lena Hinkle, who are charged in the indictment with the murder of Traxler, Eva Ressler, and May Mosley, were then in attendance. The dance closed at about 11:30 o'clock, and these parties moved toward Rove's automobile, beyond the gate, some going over and others through, as Traxler and those with him drove up, and requested Eva Ressler to open the gate, so that their automobile could pass through. She was unable to do so, and an altercation ensued, which terminated in the killing of Traxler. As Lena Hinkle left the hall, Traxler had asked her to go home with him, and when she refused, and walked on with defendant, remarked that he supposed she preferred "the damned Dago;" and there was evidence that, as Traxler stood, or was moving toward defendant beyond the gate, the latter, on whose shoulder rested Lena Hinkle's hand, deliberately shot him. The evidence adduced by the State tended strongly so to prove; though Lena Hinkle swore that she saw Rove do the shooting, and she was somewhat corroborated.

1. CRIMINAL LAW: new trial: incompetency of attorneys. I. Several errors have been assigned, and of these we may as well first consider the contention that, owing to the inexperience and lack of familiarity with the practice, in this state, of counsel who appeared for defendant, he was not accorded

a fair and impartial trial.  The record demonstrates that B. P. Barasa, of Chicago, Illinois, who was leading attorney for the defense, was not familiar with Iowa practice, and that he was assisted by a local attorney somewhat inexperienced, but that they were employed by the defendant, and not appointed by the court, as was the attorney defending in *State v. Barr*, 123 Iowa 139.  Moreover, they interposed objections for the most part appropriate, though omitting some that might well have been made.  Rarely, if ever, will a new trial be granted owing to negligence or incompetence of the attorney of the party applying therefor in a civil action.  *Jones v. Leech*, 46 Iowa 186; *State v. Benge*, 61 Iowa 658; *Albert Hass Lbr. Co. v. Gibson*, 172 Ala. 111 (Ann. Cas. 1913 D, 497, and cases collected in note).  In criminal cases, the rule is adhered to less strictly, especially where the attorney defending has been appointed by the court.  Where an attorney has been employed by the accused, and appears for him at the trial, the latter acts and speaks through the attorney.  He is, at it were, his *alter ego*. Presumably, he is the kind of an advocate he believes will best present such defense as there may be, to the court and jury.  The court is powerless to force a more diligent or capable attorney on him, for he may decline the assistance of anyone.  *State v. Moore*, 121 Mo. 514 (42 Am. St. 542).

Having selected counsel to his own liking, no fraud having been perpetrated therein, we know of no reason why he should not, with the possible advantages of such choice, suffer the accompanying inconveniences or detriment.  See cases in note in Ann. Cas. 1913 D, supra; *Darby v. State*, 79 Ga. 63 (3 S. E. 663).  We do not say that the rights of the accused may not be so flagrantly disregarded by counsel of his own choosing, and, as a consequence, justice so manifestly miscarry, as that a new trial should be ordered.  See *State v. Jones*, 12 Mo. App. 93, where a new trial was awarded, and which seems an extreme case; but it even was

overruled in *State v. Dreher,* 137 Mo. 11 (38 S. W. 567).

Nothing in the record in the case at bar indicates want of fidelity on the part of either of the attorneys acting in defendant's behalf. They appear to have had a fair comprehension of the issues and of the rules of evidence, and, though somewhat prolix, they appear to have lodged proper objections, save in one or two instances, when these would ordinarily be raised. Objections are interposed when they might as well have been omitted, and some are omitted when it would seem they should have been interposed, in the most skillfully conducted trials. It is often a matter of doubt whether tenable objections are advantageous. Perfection in the methods adopted by attorneys cannot well be demanded; and, even though the young lawyers did not present the defendant's cause as well as some others might have done, this furnishes no ground for new trial, especially in view of the strong probability that he could not have been successfully defended by anyone he might have chosen. The court rightly denied a new trial on this ground.

II. Nor do we find that remarks made 2. CRIMINAL LAW: by the court were prejudicial to defendant. trial: conduct of court: in- (a) In explaining to the jury his order that timating guilt of accused. they be kept together during the trial, his honor expressed the opinion that it would be an abuse of discretion not to do so, and added that "It is not that we haven't any faith in you, but something might happen that would cause us to set the verdict aside and try the case over again. I know that it discommodes everybody, but it is a matter of great importance." He then advised them at length that everything would be done for their comfort, and that they should take exercise. Of course, a new trial can be granted only in event of a conviction; but that is a matter concerning which jurors were not likely to have had information. Even if they had, the suggestion could not have been construed to be an intimation of his

opinion as to the guilt or innocence of the accused, only as indicative of a possible course in event of conviction. Following the above, the court proceeded:

"Here is the defendant, who does not speak our language,—at least not very well,—possibly laboring under some suspicion as to what is going on. We have not only got to try the case in the manner that the law says we shall, but try it right, and render justice; and therefore we must do it in a way to convince them that we have given them the very best attention that is possible, in a legal and in a proper manner,—at least, we must not do it in a way that would give them any ground for suspicion, no matter how honest we are, or how hard we try to perform our duty. You will appreciate that your decision in this case is one of grave importance. It is as important as mine is. I have work to perform during all the case; but in the end, your work will be of more importance than the counsel at the trial table, and mine."

This was tantamount to saying that defendant must not only be accorded a fair trial, but one which had all the appearances of such, even to commending itself to the defendant and those indicted with him. All of this might as well have been omitted. The court owed no apology to the jury for its order that the jury be kept together throughout the trial. But an explanation that, in causes of the importance of those in which murder is charged, such orders are usual, and in the interest of a fair trial, was not out of order. Undoubtedly, the jury so construed the remarks of his honor, and we are satisfied that they could not well have taken what he said concerning apparent fairness, in view of defendant's situation and inability to express himself well in English, as in any manner indicative of his opinion as to his guilt or innocence. We are of opinion that no prejudice resulted from what was said.

(b)   Counsel for defendant objected to Traxler's widow's sitting in the court room and crying in the presence of the jury. The court, in overruling the objection, stated that she was sitting immediately back of State's counsel, and shed tears during the opening statement for the State, but did not cry audibly; and ruled this without prejudice. Manifestly, her conduct was not such as to have warranted her exclusion from the court room or condemnation, and the ruling has our approval.

3. CRIMINAL LAW: trial: course and conduct in general: excluding emotional witness.

(c)   In   cross-examining   James   Richmond, counsel asked him if he had testified as stated at the coroner's inquest, and after several questions were put and answered, the court remarked:

4. CRIMINAL LAW: trial: conduct of court: inferring truthfulness of testimony.

"It occurs to me that some of this is immaterial, as he has testified here in truth that he did not know who fired the shot.  He did not see the gun in anybody's hands.  Mr. Barasa: The only reason I brought this question up was this: he intimated at one time—sort of an intimation— that it was Frank, and I wanted to get the straight of it. I am satisfied now.  The Court: You could ask him direct about it, instead of asking him if he did not testify so before some other court.  Mr. Barasa: The point was, there was a contradiction from this testimony and the other. The Court: The last three or four questions, there is no contradiction at all in his testimony at that time.  If you want to lay the foundation for impeachment, that is proper; but it is immaterial what he testified to at the other time, except for the purpose of impeachment."

The exception is to the use of the words "in truth," with reference to the testimony.  The expression was not fortunate, but could not have proved prejudicial; for in that respect, the testimony of Richmond was not contradicted,

and if what he said was the truth, it was favorable to defendant.

(d) Lena Hinkle, jointly indicted with

**5. CRIMINAL LAW: trial: course and conduct in general: warning witness against incrimination.** defendant, was called as a witness for the defense; and, before testifying, was warned by the court that she had the right to refuse to give any answer which would tend to render her criminally liable, or exposé her to public ignominy. There was no error in this. On the contrary, the course pursued, as she was accused of the offense charged, is to be commended. Several other remarks of the court made during the trial are criticised, but require no attention.

III. The bailiff, John Phares, was called

**6. CRIMINAL LAW: trial: course and conduct in general: bailiff as witness.** as a witness in rebuttal by the State; and, after he had testified to his acquaintance with the people in and around Centerville, and with Lena Hinkle, an objection was raised to using the bailiff as a witness. After the court overruled this objection, saying that the point as to whether, if he testified as a witness, he should be continued in charge of the jury, would come up later, the witness was withdrawn. Manifestly, this could in no manner prejudice the rights of the accused.

IV. Charles Rove, jointly indicted with

**7. CRIMINAL LAW: trial: conduct of counsel: seeking undue advantage in presenting witnesses.** defendant, was called in rebuttal, and sworn as a witness, whereupon the county attorney, Hays, said:

"If the court please, it now appearing to the State that the defendants Charles Rove and Roy Nofio, together with their attorney, C. F. Howell, is in the court room, and at their request, they are permitted to take the stand and testify on the cause now on trial, without being called or subpoenaed by the State, or even at the request of the State so to do. Mr. Barasa: I object, unless they are shown to be brought as a court wit-

ness, then. •Mr. C. F. Howell: I want the record to show
that the State requests them, and that they waive their
privilege. Mr. Valentine: No, sir, the State don't request
them at all. Mr. C. F. Howell: They come voluntarily,
surely. The Court: The county attorney, Mr. Valentine
assisting him, have charge of this case, in so far as the prose-
cution is concerned; and if these two defendants, now in
the court room, take the witness stand to testify, their tes-
timony must be regarded as for one side or the other, and
one side or the other will be responsible for it. And at this
stage of the trial of the case, after the defendants have.
rested, and the State is now in its rebuttal, the court is
of the opinion that the testimony would have to be regarded
as evidence on behalf of the State, and the State bound by
it, as though they had called the witnesses themselves. They
have the privilege of either taking the witness off of the
stand, or assuming the responsibility of his testimony as
one of their witnesses. Mr. Valentine: If we examine him,
we examine him as our witness, and what—I don't want
the record to show that the defendant was requested by the
State to testify. Mr. C. F. Howell: No, we would not want
that record made. If the court please, Mr. Hays suggested
to me that he wanted to use them,— Mr. Hays: I don't so
understand it."

The court then excused the jury; and, after some fur-
ther discussion, adhered to the ruling as above recited, and
the State withdrew the witness. This sort of performance
is not to be commended. Undoubtedly, the State sought to
obtain the advantage of testimony if favorable, without any
risk if unfavorable, or the necessary consequence in event
Rove and Nofio were later put on trial. The attorney repre-
senting them undoubtedly was without interest in the trial,
save as what might happen would be likely to affect favor-
ably the subsequent trials of his clients. He was entirely
out of order in projecting himself and those he represented

into this trial, and the State ought not to have been induced by his machinations to have put on the stand any witness not called by it or previously produced by defendant. But neither of these accused persons testified. The State refused to treat the witness as called by it, or to elicit his testimony in behalf of the prosecution; and therefore, there was no room for any inference that Rove's testimony would be favorable to the prosecution. Though the entire performance is to be condemned, we are satisfied that no prejudice could have resulted therefrom.

V. It developed in the cross-examina-

8. CRIMINAL LAW: evidence: issuable and relevant facts: noncontested fact.

tion of Lena Hinkle that she had been married and divorced. Later in the trial, counsel for defendant tendered the original decree in evidence, and on objection, it was excluded. The ruling is to be approved; for the fact of the divorce was all that was apparently material, and that only on the credibility of Mrs. Hinkle, it not being claimed that anything in the decree threw any light thereon.

VI. One Downs, who had been sheriff

9. CRIMINAL LAW: trial: conduct of counsel: offer of irrelevant, noninflammatory testimony.

of the county, testified as to the general reputation of a witness, Mrs. Moseley, for general morality and for truth and veracity. On redirect examination, the county attorney inquired, "Were you sheriff at the time May Moseley's husband was tried for murder?" An objection was sustained; but appellant contends that the mere asking of the question was prejudicial error. The county attorney should not have made the inquiry; but the mere asking of the question, not persisted in, cannot be regarded as prejudicial. See cases collected in the dissent in *State v. Weaver*, 182 Iowa 921.

VII. Exception is taken to several rulings on the admissibility of evidence in the course of the cross-examination of Lena Hinkle. As there was no answer to one of the questions propounded, the ruling, even if erroneous, was not prejudicial. Another question asked was this:

10. WITNESSES: credibility: cross-examination: manner of living pursued by witness.

"Now, after you had gotten your divorce from your husband, Rigon, or whatever you call him, you continued to live with him as his wife for about a year after that, didn't you?"

Over objection, she answered, "No, sir." This inquiry touched her manner of life, and was permissible as bearing on her credibility as a witness. She had been refusing to answer whether her husband's father had given her $300, so that she would get a divorce, and thereafter admitted that he did. There was no error. Thereafter, she was asked whether it was arranged between herself and husband that they would marry again after the divorce was procured, and whether they did not live together as husband and wife until the $300 was spent, and then the husband refused to marry her. In view of the circumstance that she admitted that she had received $300 from her husband's father as the price of procuring a divorce from his son, we are not inclined to regard this questioning as not justified.

VIII. On cross-examination, Mrs. Moseley was asked when she was divorced from her first husband, to which an objection was overruled. The inquiry was admissible, as bearing on the credibility of the witness.

IX. Winnie Richmond testified that she was at the dance hall "the night before this killing," and danced with Nofio. She was then asked whether, "on the night before Pearl Traxler was killed, if you heard this defendant, Roy Nofio, say anything about

11. TRIAL: reception of evidence: reception without objection: gambling on effect.

Pearl Traxler?" Counsel for defendant objected that this was immaterial as to defendant, and Nofio was not on trial; but, after considerable parley, declared that, "for the time being, and in order to save the time of the court and jury, I will withdraw my objection." Thereupon, the witness answered, "Yes, sir," and proceeded without objection. "He said he would kill Pearl Traxler if he had to kill ten Americans to get him." Being asked the occasion of this, she explained that "Traxler came and asked me to quit dancing with him, and I quit dancing with him," and Nofio then made the remark. At the close of defendant's evidence, defendant's attorney moved that the testimony of this witness be stricken; but the motion was overruled. The motion might very well have been sustained; for there was no proof tending to show that a conspiracy existed prior to the night of the killing, and even though the evidence went in without objection. See *People v. Blevins*, 251 Ill. 381 (Ann. Cas. 1912 C, 451), where the court ruled that overruling such a motion, where inexperienced attorneys had been appointed to defend, was error. But counsel for defendant expressly withdrew objection to the first question, and acquiesced in the introduction of the evidence. Counsel must have had some purpose in so doing; and, as his client denied firing the revolver at all, might have thought to throw suspicion on Nofio. Whatever his purpose, however, overruling a motion to strike evidence received as this was, ought not to be denounced as error.

X. Timely objection was interposed to instructions on conspiracy, it being contended that there was no evidence such as to warrant its submission to the jury. The evidence on this issue was ample to carry it to the jury. We have examined the record with great care, and discover no error which will justify interference with the judgment, or any difference with the conclusion of the jury.—*Affirmed*.

PRESTON, C. J., EVANS and SALINGER, JJ., concur.