STATE OF IOWA, appellee, v. MYRON EUGENE BENSON, appellant.

No. 48610.

(Reported in 72 N.W.2d 438)

OCTOBER 18, 1955.

REHEARING DENIED DECEMBER 16, 1955.

Joseph Z. Marks and Don Hise, of Des Moines, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, Clyde C. Herring, County Attorney, and Edward R. Fitzgerald, Assistant County Attorney, for appellee.

LARSON, J.—This is an appeal from the Polk County District Court wherein the defendant was found guilty of the crime of larceny of two tires during the night of July 22, 1953, from the Merchants Motor Freight, Inc., valued at more than $20. After conviction by a jury February 3, 1954, the trial court denied defendant's motion for a new trial and he was sentenced to 90 days in jail and fined $300.

Only two issues are raised in this appeal: (1) whether defendant was deprived of having a fair trial; and (2) whether venue had been established in Polk County, Iowa, as charged.

The defendant Myron Eugene Benson is a truck driver 22 years of age and had been hauling freight for the Merchants Motor Freight for two or three years. On August 7, 1953, he drove a truck pulling a Merchants Motor Freight trailer from Des Moines to St. Paul. Upon arriving at the terminal in St. Paul August 11, 1953, employees of the company noticed that two of the tires on defendant's truck were tires belonging to the company, and they were removed forthwith and defendant was taken into custody. He told the operations manager he had bought the tires in Des Moines, and told Des Moines police officers who were sent to St. Paul for him that he had purchased the tires from a stranger at an oil station in Des Moines for $20 each. He made a written statement to the St. Paul police (Exhibit 1) stating that he bought the tires "from a man in Des Moines." He also told the same story to Mr. Wolf, the

terminal manager of Merchants Motor Freight in Des Moines. No other excuse or alibi appears to have been mentioned by defendant to any of these parties or officers prior to the trial February 1, 1954. At the trial defendant continued to maintain his story that on July 29, 1953, he purchased the tires for $20 each from a stranger at the Smith Service Station on Hubbell Boulevard in Des Moines, and that he borrowed $20 from Mr. Smith to pay for them. That testimony was corroborated by defendant's witnesses Smith, Jordan, and Gilbert.

Later at the hearing on the motion for a new trial defendant testified he left Des Moines on July 21, 1953, and was in Chicago, Illinois, on July 22 and July 23, 1953, and that he told this story to his counsel, Mr. Eller, when he first employed him on or about August 13 or 14, 1953. He said he gave Eller a sales slip showing a purchase of gas at a Chicago station July 22, 1953, nearly two weeks before the trial, a slip of paper signed by the proprietor of the station stating that defendant was there July 22 and 23, 1953, nearly three weeks before the trial, and also furnished Eller a photostatic copy of the check he received in Chicago July 22, 1953, about three weeks before the trial.

At the hearing on the motion Mr. Eller testified that only the check and the statement from the man in Chicago were brought to him by the defendant two days before the trial, and that because he had little faith in the new story and did not have time before trial to check it, he did not feel justified in asking for a continuance and did not serve the required four-day notice of alibi defense required by the statute. Section 777.18, Code of Iowa, 1954. In the opening statement Eller did make reference to defendant's claim that he was out of the state on the night of the alleged theft and, when stopped by State objections, on the court's inquiry as to whether or not he claimed he had served any notice of alibi, he said: "Nothing more than what this boy told me at the time, that he was out of the state, that he was not here, and, of course, if I have overlooked serving the notice that is necessary, of course my hands are tied on that. I don't think we have had notice enough of the fact he was not in the state." With the exception of this state-

ment to the court in the presence of the jury, no further information as to this alleged alibi was presented.

I. The trial court of course is vested with a large amount of discretion in passing upon motions for a new trial, especially so where the ruling is made by a judge who presided at the trial. We will not interfere except in a reasonably clear case of abuse of this discretion. Modern Heat and Power Co. v. Bishop Steamotor Corp., 239 Iowa 1267, 1271, 34 N.W.2d 581; Egy v. Winterset Motor Co., 231 Iowa 680, 688, 2 N.W. 2d 93, 97, and citation; and 39 Am. Jur., New Trial, section 13.

II. Defendant's burden here is heavy. In order to obtain a reversal of the trial court's action in overruling his motion for a new trial he must show clearly that counsel, in the management of the case below, was so incompetent or grossly or willfully neglectful as to make the proceeding a farce and mockery of justice, or that it so prejudiced him that substantial justice was not done. While a few cases may be found holding that where counsel is so manifestly incompetent or so grossly mismanages the case that the defendant is prevented from having a fair trial, State v. Keller, 57 N. D. 645, 223 N.W. 698, 64 A. L. R. 434, the general and prevailing view is that the defendant, having employed as his counsel one authorized to practice in the courts, is ordinarily bound by any course of action that is followed by the attorney thus selected by him. State v. Dangelo, 182 Iowa 1253, 166 N.W. 587; Sayre v. Commonwealth, 194 Ky. 338, 238 S.W. 737, 24 A. L. R. 1017; State v. Dreher, 137 Mo. 11, 38 S.W. 567; 14 Iowa L. Rev. 476. After a trial, particularly in a criminal case where there has been a conviction, errors in the exercise of counsel judgment in the conduct of the defense are easy to point out, and this is especially true where appellate counsel as herein had no part in the original trial. This situation seems to invite a change of counsel, and the hearing upon the motion for a retrial results in an actual trial of the first counsel. Naturally the courts frown on such practice and will give recognition only to those of an aggravated nature. Was such the case before us? The trial court thought not and we agree.

Mr. Eller, who has successfully practiced law in state and federal courts since 1906, was retained by the defendant shortly

after his arrest in August 1953. There is no claim that consultation was limited or inadequate. Mr. Eller said he had never heard of the local witness, Mr. Belger, who defendant now claims drove into Chicago with him July 21, 1953. Obviously it would have been easy for defendant to have brought this local witness in to a conference with his counsel. Eller also claims the only documents shown him two days before the trial were the check for trucking services from the Western Transportation Company dated July 22, 1953, for $120, and a piece of paper signed by a John P. Daly stating the defendant "M. E. Benson was in this gas station at 4000 So. Ashland Ave. July 22 and 23—left the night of the 23rd." Affidavits of Belger, Daly and Conners, apparently friends and business associates of the defendant, produced at the hearing on the motion for a new trial, were all secured after the original trial by the appellate counsel.

There was a sharp conflict as to when defendant advised his counsel of his claim that he was in Chicago on the date of the theft, the defendant claiming two or three weeks, and counsel two days, before trial. No complaint was made to the court at the time of the trial as to the importance to defendant of this defense or of counsel's alleged arbitrary action in proceeding without benefit of that defense. Defendant expressed no dissatisfaction with the conduct of the trial to anyone until sometime after the jury verdict.

Without passing upon the strength or weakness of the alleged alibi, it is sufficient we think to say that counsel's judgment in not asking delay of the trial to file the four-day notice of this alibi was not so erroneous or such a serious mistake as to make the proceedings a farce and a mockery of justice. Such error or omission must reasonably approach that result to justify disturbing the learned trial court's discretion in overruling the motion for a new trial. We think, at most, counsel's abandonment of the alleged alibi would amount to no more than an error in judgment, if it were an error at all.

New trials are usually not granted for mistakes in judgment of counsel in the conduct of cases. Mr. Eller explained it was his best judgment that to introduce the testimony lately brought him by defendant, and which counsel himself doubted,

would have jeopardized his chances of acquittal, for defendant had openly and freely maintained up to that time that his defense was that he had purchased the tires at Smith's Service Station in Des Moines from a stranger. Apparently the jury did not believe him or his witnesses, and so it is extremely doubtful that counsel was wrong in saying he did not feel the jury would believe the late alibi that he was in Chicago on the night of the larceny.

While it is true defendant had little court experience, he does not fall in the class of a foreigner or an ignorant or illiterate person who understands little or nothing of our court proceedings. By his own admission defendant had been under parole for a previous criminal offense in Polk County, Iowa. He was a businessman in the trucking business, though apparently not a very convincing one. The trial court, in observing defendant in both the trial and hearing on the motion, stated bluntly:

"Under the entire record in this matter this Court can well understand why it was very difficult for Mr. Eller to represent the defendant, * * * as *it is the opinion of the Court defendant is unworthy of belief.*" (Emphasis ours.)

We find no substantial evidence that Mr. Eller willfully neglected defendant's defense. True, while being pressed on the witness stand, Mr. Eller did say he believed that 99% of those indicted for a crime were guilty. He did not say he thought defendant was guilty, but that when defendant's witnesses said the big truck tires were brought to the service station in the back seat of a small Chevrolet sedan, he feared the cause was lost. The story does seem a bit unbelievable. It is sufficient to say we fail to find therein clear negligence or gross mismanagement sufficient to disturb the trial court's decision. This is in accord with our previous decisions.

In State v. Benge, 61 Iowa 658, 662, 17 N.W. 100, 102, one of our very early cases, we held, in civil cases the rule is almost invariable that the incompetency of a party's attorney is no ground for a new trial, but in criminal cases, where the penalty is severe, the rule may possibly be adhered to less strictly. We said therein:

"In criminal cases, and especially in cases involving the life

·of the defendant, the court would probably be justified in adhering to the rule somewhat less strictly. * * * But in any case, to justify a reversal upon this ground, there should be a strong showing both of incompetency and prejudice."

In perhaps our leading case on the subject we said in State v. Dangelo, supra, 182 Iowa 1253, 1256, 166 N.W. 587, 588: "Where an attorney has been employed by the accused, and appears for him at the trial, the latter acts and speaks through the attorney. He is, as it were, his alter ego. Presumably, he is the kind of an advocate he believes will best present such defense as there may be, to the court and jury. The court is powerless to force a more diligent or capable attorney on him, for he may decline the assistance of anyone. * * * Having selected counsel to his own liking, no fraud. having been perpetrated therein, we know of no reason why he should not, with the possible advantages of such choice, suffer the accompanying inconveniences or detriment."

It must be pointed out that we do not say that the rights of the accused may not be so flagrantly disregarded by counsel of his own choosing, and as a consequence justice so manifestly miscarried that a new trial would not be justified, but nothing in this record at bar indicates to us such a want of fidelity on the part of Mr. Eller, acting in defendant's behalf. He appeared to have a fair comprehension of the issues and rules of evidence, and we cannot agree with defendant's contention now that counsel's strategy was wrong under the circumstances or that it clearly resulted to his prejudice. We believe defendant had a substantially fair trial and that, if believed, his defense of having purchased the tires from a stranger would have been adequate. It cannot be presumed the jury would have believed the alibi witnesses either. Certainly the trial court did not believe that story in ruling on the motions before it, but correctly concluded defendant was not prejudiced by counsel's defensive efforts.

In a very recent publication the entire subject of client-counsel relationship is very well discussed. It is entitled "Right to Counsel", by Beaney, University of Michigan Press, 1955. The author says at pages 122, 123: "It is very difficult for a defend-

ant to claim successfully that counsel chosen by him was so inefficient that the trial judgment should be reversed. The general attitude of courts is that the onus for having made a bad choice rests with the defendant (People v. Pierce (1944), 387 Ill. 608, 57 N.E.2d 345) or, stated differently, that a judgment carries a presumption of regularity, and what a counsel might have done when viewed in retrospect should not be allowed to upset the verdict. (Miller v. Hudspeth (1948), 164 Kan. 688, 192 P.2d 147.) Obviously there are few, if any, perfectly conducted defenses, and all that a defendant may expect is a fair hearing and substantial justice. Occasionally, however, even with retained counsel, the deficiencies of counsel's presentation are so gross and obvious that the reviewing court will reverse (Wilson v. State (1943), 222 Ind. 63, 51 N.E.2d 848, where counsel's appearance was clearly 'perfunctory'; 42 Mich. L. Rev. 1125) but the great majority of such claims are denied on the ground that substantial justice was done, (Ingram v. State (1951), 230 Ind. 25, 99 N.E.2d 410), or on the more specific ground that incompetence was not proved or was not so gross that it destroyed the fairness of the hearing [citing many cases including State v. Lee (1951), 78 R. I. 46, 78 A.2d 793]. * * * A substantially fair trial will be upheld in either case."

While it is so that in State v. Smith, 199 Iowa 568, 569, 202 N.W. 112, this court said: "It is true that, in one or two instances, this court has reversed on the general ground that defendant had not had a fair and impartial trial, by reason of inefficiency of counsel;" we have failed to discover such Iowa cases, and they were not furnished us by appellant's counsel. However, the court there then went on to say: "but where this rule has been applied, it was only applied because the record showed on its face glaring incompetency and inefficiency on the part of attorneys * * *" and held the record did not present such a condition that would warrant its interference.

And so it goes in most such cases that we have been able to find. There can be no doubt but that the counsel must render more than perfunctory representation (Wilson v. State, 222 Ind. 63, 51 N.E.2d 848, cited in 157 A. L. R. at page 1229), but much more was rendered in the case at bar. The record shows

defendant had legally-trained counsel, experienced and sober, and that no claim is justified that his ineffectiveness, if any, approached the point of having no counsel. Obviously then, the rules laid down in the serious offense cases of Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527; Betts v. Brady, 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595; and Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461, 146 A. L. R. 357, do not apply, and no constitutional question of due process appears. While "effective counsel" may be a proper requirement, especially in capital cases, unless one is so ineffective as to amount to no counsel at all, a question of due process would not likely appear. Such issue, we feel, is not applicable to the case at bar for it was reasonably well defended. We are satisfied that the accused suffered no prejudice and that substantial justice was done. For the general rule in this regard, see 39 Am. Jur., New Trial, section 153, pages 159, 160.

III. Venue was sufficiently established. While it is true there was no direct testimony clearly stating that the larceny took place in Des Moines, Polk County, Iowa, we think that is the clear inference in the testimony of Bennett M. Johnson, the service manager for the Merchants Motor Freight, who testified that he was a resident of Des Moines, Iowa; that as service manager he was superintendent over the shop and equipment, inspections and mechanical work for the division located at 321 S.W. Sixth Street, Des Moines, Polk County, Iowa; that in performing his duty of inspecting trailers, tractors and tires on the 22nd of July, 1953, he noted the two tires in question on one of their trailers, and when he again checked it in the morning of the 23rd they were gone. Defendant complains that the testimony then showed the trailer was not at that address but "was on Maury on *our* parking lot down by the river, Des Moines River." (Emphasis ours.) While it is true we do not take judicial notice of the singular fact that there is a Maury Street in Des Moines, and do recognize that the Des Moines River passes through much of Iowa outside Des Moines and Polk County, yet the inference is quite clear under the connected testimony and circumstance that Johnson, the inspector for the Des Moines office regularly inspecting equipment on

their parking lot, would be inspecting the equipment in close proximity to the office designated specifically, and the reference to Maury Street by the Des Moines River does not materially change the site of the usual activities of the Des Moines, Polk County, Iowa, office of the Merchants Motor Freight. Under the circumstances related, the language "our parking lot" sufficiently identified and connected the place with the address given in the City of Des Moines, Iowa.

Perhaps the leading case in Iowa on this question is State v. Brooks, 222 Iowa 651, 653, 269 N.W. 875, 876, cited by both parties to this appeal. There we said: "It is true that venue may be established by inference, but in all cases so holding, it appeared that the place where the offense was committed was identified as being in a certain town, or within a certain distance of a town within the county, as in State v. Meyer, 135 Iowa 507, 113 N.W. 322, 124 Am. St. Rep. 291, 14 Ann. Cas. 1, where it was said that the court would take judicial notice that the city of Sheldon is in O'Brien County."

Also see State v. Caskey, 200 Iowa 1397, 1398, 206 N.W. 280, 281; State v. Ostby, 203 Iowa 333, 210 N.W. 934, 212 N.W. 550.

Furthermore, as the courts of this state will take judicial notice of the geography of the state, State v. Mitchell, 139 Iowa 455, 116 N.W. 808, and as venue may be proven by inference as well as by direct assertions of witnesses, State v. Meyer, supra, the sum total of these holdings is that the witness need not testify in words that the crime was committed within the county in question, but that such fact, if fairly inferable from the testimony given, is sufficient to carry the question of venue to the jury.

It was also pointed out by the State that defendant himself fixed the scene of the alleged offense, for he said:

"I absolutely never did take those tires from the Merchants Motor Freight. * * * Q. The Merchants Motor Freight, was that in Des Moines, Polk County, Iowa? A. Yes, sir, it was."

We conclude therefore that the evidence quoted, together with other testimony in the case, was sufficient to take to the jury the question of venue. We also conclude that substantial

justice was done herein, that the trial court rightly denied defendant's motion for a new trial on both grounds, and hold the judgment of that court should be affirmed.—Affirmed.

All JUSTICES concur.