453 P.2d 508

**STATE of Arizona, Appellee,**

v.

**Donald Gene BOAG, Appellant.**

**No. 1780.**

Supreme Court of Arizona.

In Banc.

April 24, 1969.

Rehearing Denied May 20, 1969.

**364**

Gary K. Nelson, Atty. Gen., by Carl Waag and Terry Pierce, Phoenix, for appellee.

Vernon Croaff, Public Defender, by Grant Laney, Phoenix, Dushoff, Sacks & Corcoran, by Robert J. Corcoran, Phoenix, for appellant.

Donald Gene Boag, in pro. per.

McFARLAND, Justice:

Donald Gene Boag, hereinafter referred to as defendant, was convicted on three counts (1) assault with intent to commit murder; (2) robbery; and (3) mayhem. All counts included a prior conviction. He was sentenced from 75 to 99 years on Count 1; 75 to 99 years on Count 2; and 13 to 14 years on Count 3. The court ordered the sentences to run consecutively.

Defendant was serving a prison sentence in California at the time of his trial, and after the Arizona conviction he was sent back to serve out his term. The Arizona sentences were ordered to commence after the California sentence. Defendant appeals from the conviction and sentencing.

On the evening of July 8, 1966, defendant entered the Travelodge Motel on East Van Buren in Phoenix. The motel was managed by Mr. and Mrs. Arnold Peterson. Once inside, defendant produced a pistol and forced Mrs. Peterson to give him all the available cash. He then forced her into the rear living quarters where Mr. Peterson had been sleeping. By the use of threats he coerced Mrs. Peterson into tying up her husband with a piece of electrical cord, and then he tied Mrs. Peterson and stuffed a rag into her mouth. Defendant then returned to Mr. Peterson, who was lying on the bed, produced a knife, and proceeded to gouge out Mr. Peterson's left eye.

Defendant's next vicious act consisted of taking Mr. Peterson's leather belt and placing it around Mrs. Peterson's neck, then tightening it until she lost consciousness. He thereafter returned to Mr. Peterson, and once again stabbed him in the same eye. These stabbings caused the complete loss of the eye. Finally the arrival of motel guests caused defendant to flee the scene of the crime.

A total of twelve briefs were filed, five in propria personam. From the multitude of issues presented, several are redundant; therefore, to facilitate the discussion of all the issues, it has been necessary to consolidate such issues.

The first assignment of error was raised only by defendant in his brief filed in persPonam. He claims that by transferring him to California he was denied an opportunity to aid in his appeal. He maintains

that this amounts to denial of due process under the Fourteenth Amendment to the Constitution of the United States.

■ The record in the instant case does not substantiate the charge of defendant that his transfer to California denied him an opportunity to aid in his appeal or the charge that his trial attorney was negligent, incompetent, and indifferent.

There is no evidence that defendant's being moved to California prejudiced his rights. As a matter of fact, he filed briefs in personam from California which indicate that he had competent assistance from some source. Defendant complains that the Public Defender's Office at first filed a letter in which it was stated that there were no grounds for appeal. Then the U. S. Supreme Court handed down the decision of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. The Public Defender thereafter filed a brief which was well written and indicated a thorough search of the record. Defendant filed an objection to being represented by the Public Defender's Office, and this Court thereafter appointed Robert Corcoran attorney, who also filed a brief and a reply brief.

We find no merit in defendant's contention that his rights were prejudiced by his removal to California.

■ Next, defendant alleges that his trial attorney was both incompetent and indifferent to his cause. The alleged actions are largely based upon differences of opinion between counsel and defendant concerning certain courses of action. Each specific complaint has been examined. There is nothing in the record to indicate indifference or incompetency.

In State v. Kruchten, 101 Ariz. 186, 417 P.2d 510, we stated:

"* * * It lies behind a defendant's natural inclination to bring hindsight to bear on his lawyer's performance and often contains his second thoughts concerning his plea of guilty and the advice of counsel which led to it. See Kami-

sarr, The Right to Counsel and The Fourteenth Amendment, 30 U.Chi.L.Rev. 1. It has been noted before that the willingness of courts to consider claims of inadequate trial representation invites a change of counsel and results in the actual trial of the former attorney. State v. Benson, 247 Iowa 406, 72 N.W. 2d 438, 441; and see, Waltz, Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases, 59 Nw.U.L.Rev. 289.

\* \* \* \* \* \*

" 'Advocacy is a skill and art; easy to criticize, difficult to fairly appraise. Indeed a post-mortem of criminal trials, selected at random, would undoubtedly reveal flaws of varying magnitude in the trial techniques of respected members of the bar. \* \* \*' " See United States v. Stoecker, 216 F.2d 51 at 52 (C.A.7, 1954)

■ Defendant next contends that his rights were prejudiced because he was handcuffed and chained when he was brought into the courtroom. Neither defendant nor his counsel contend that the accused remained shackled during the course of the trial. It has been recognized from early common law that a prisoner coming into court for trial is entitled to make his appearance free of shackles or bonds. The reason for the rule is that there might be prejudice in the minds of the jury against the prisoner, and therefore it might interfere with a fair and just decision. It has long been recognized that exceptions to this rule have been made, and in such matters the conduct of the trial rests in the sound discretion of the court. Under the record in the instant case there is nothing to show that the trial court abused this discretion, or that the handcuffs were not removed as soon as safety would permit. State v. Martin, 102 Ariz. 142, 426 P.2d 639; State v. Randolph, 99 Ariz. 253, 408 P.2d 397; State v. George, 98 Ariz. 290, 403 P.2d 932; State v. Chavez, 98 Ariz. 236, 403 P.2d 545. The rule governing this discretion is succinctly set forth in the case quoted in Chavez, su-

pra, McDonald v. United States, 8 Cir. 1937, 89 F.2d 128, wherein it is stated:

"* * * It is too obvious for argument that hardly any other matter can be better relegated to the discretion of the trial court than that of safeguarding the court, counsel, jury, and spectators, and assuring the continued presence and attendance of the accused at the trial. Absent incontrovertible evidence of hurt, the trial court should be permitted to use such means, to secure the named ends, as the nature of the case, the known criminal record, character, associates in crime, and reputation of the accused shall reasonably call for, and such is the rule enunciated in the few cases existing which deal with the question * * *."

Also see Odell v. Hudspeth, 189 F.2d 300 (C.A. 10th).

■ Defendant claims the following statement made in the prosecution's closing argument was reversible error:

"* * .* What kind of person would do something like that? I couldn't even call him an animal, because animals wouldn't do this type of thing."

Defendant failed to object to the comment. Failure to object to a comment is a waiver of the right to have the comment reviewed upon appeal, unless there is fundamental reversible error. State v. Dillon, 104 Ariz. 33, 448 P.2d 89; State v. Sowards, 99 Ariz. 22, 406 P.2d 202; State v. Hernandez, 96 Ariz. 28, 391 P.2d 586; State v. Woolery, 93 Ariz. 76, 378 P.2d 751.

■ Attorneys are given wide latitude in their arguments to the jury. State v. Dillon, supra; State v. Robison, 99 Ariz. 241, 408 P.2d 29; State v. McLain, 74 Ariz. 132, 245 P.2d 278; State v. Deckter, 73 Ariz. 427, 242 P.2d 551; Guldin v. State, 63 Ariz. 223, 161 P.2d 121; Taylor v. State, 55 Ariz. 13, 97 P.2d 543; Hash v. State, 48 Ariz. 43, 59 P.2d 305; Sullivan v. State, 47 Ariz. 224, 55 P.2d 312.

■ In Sullivan v. State, supra, we set forth the test used in determining whether prosecutor's remarks are so objectionable as to cause reversal:

"* * * Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict * * *."

Also see State v. Gallegos, 99 Ariz. 168, 407 P.2d 752; State v. Goodyear, 98 Ariz. 304, 404 P.2d 397. The vicious nature of the acts could be properly emphasized by counsel within the latitude given to him in closing argument. Further, the court instructed that nothing in the closing argument should be considered as evidence. Such instruction has been held to uphold the admission of the comment, on grounds that the jury is properly informed on how to treat such a comment. State v. Goodyear, supra; State v. Robison, supra. We find no fundamental error.

■ Next, defendant objects to the following instruction:

"A person who unlawfully and maliciously puts out an eye of a human being is guilty of mayhem."

He claims it was a comment on the evidence which is forbidden under Ariz. Const., Article VI, Section 27, A.R.S. This provision is meant to prohibit judges from "expressing their opinion" as to the evidence. State v. Willits, 96 Ariz. 184, 393 P.2d 274. The instruction was a correct statement of the law taken directly from the statute defining "mayhem." (See § 13–521, A.R.S., as amended 1967.) a direct quote of the correct criminal law, applicable to a set of facts, when given for the purpose of informing the jury of the applicable law, cannot generally be considered, either directly or inferentially, as a comment on the evidence.

■ Defendant made a motion for a psychiatric examination as set forth in Rule 250, Rules of Crim.Proc., 17 A.R.S. This was denied, and he claims this was error. This rule of procedure clearly states, and the Arizona law holds, that the trial court shall order the examination upon "reasonable grounds." The granting of such an order is, therefore, within the

discretion of the trial court. State v. Buchanan, 94 Ariz. 100, 381 P.2d 954; State v. De Vote, 87 Ariz. 179, 349 P.2d 189.

 Defendant next contends that prejudicial error resulted when the court, after the return and reading of the verdict but *before* the requested polling of the jury, instructed the jurors that they would have to return the following day to try the issue of defendant's alleged prior conviction. Defendant relies on the doctrine that a record of prior crimes which does not fall within a recognized exception is neither relevant nor admissible. State v. Hughes, 102 Ariz. 118, 426 P.2d 386; State v. Akins, 94 Ariz. 263, 383 P.2d 180; Taylor v. State, supra.

All twelve jurors agreed with a verdict which was rendered before any knowledge of any prior conviction. Therefore, defendant cannot claim that the verdict by which he was sentenced was tainted with the influence of an inadmissible prior conviction.

After the verdict was read by the court, the following transpired:

"THE COURT: Ladies and Gentlemen, your services in this case are not over yet.

"MR. O'MARA: If it please the court, I would like to have the jury polled as to those respective counts.

"THE COURT: All right. *Let me tell them, then we'll poll them.* [Referring to mentioning of the trial on the prior conviction]

"MR. O'MARA: *All right.*" [Emphasis added.]

When told that the jurors would be informed of the issue of the prior conviction, before the poll, defense counsel did not object. A failure to object to what is now claimed as reversible error indicates counsel did not believe that the mentioning of the next day's trial would in any way prejudice defendant. We agree that this information did not prejudice defendant.

Defendant next claims that the court instructed the jury that it was to consider all the counts as one, and should not consider the guilt or innocence of defendant on each individual count. Defendant refers to instructions which possibly might give this impression, however, the following instructions unequivocally inform the jury that each charge is to be considered separately:

"Now, Ladies and Gentlemen, in this case, where there are three separate charges against the defendant, you must be satisfied beyond a reasonable doubt of the guilt of the defendant with respect to any one of the charges independent of the other two.

"In other words, it's not enough to conclude that because he is guilty of one count, he is guilty of the other two, but you must be satisfied on each individual charge of the three counts, you must be satisfied beyond a reasonable doubt that he is guilty of that charge; and, unless you are, of course, as I said, it's your duty to acquit him of that charge."

 Instructions are considered as a whole, and a conviction shall not be reversed by analyzing an instruction independently, when if read together they convey the proper idea. State v. Corrales, 95 Ariz. 401, 391 P.2d 563; State v. George, 95 Ariz. 366, 390 P.2d 899; State v. Simmering, 89 Ariz. 261, 361 P.2d 4; and State v. Evans, 88 Ariz. 364, 356 P.2d 1106. A reasonable interpretation of the instructions would lead a reasonable man to believe that each count should be considered separately.

The next allegation concerns the construction of § 13–1641, A.R.S., which reads as follows:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

Defendant contends the entire episode which gave rise to the three counts was "an act" as contemplated by this statute, and therefore he could only be convicted under one of the criminal statutes. State v. Hutton, 87 Ariz. 176, 349 P.2d 187, is directly in point, and refutes defendant's contention. In that case the defendant broke into a building and stole a saddle. He maintained that he could not be convicted and sentenced for both larceny and burglary because they arose out of the same act.

This Court held in State v. Hutton, supra, that § 13–1641, A.R.S. was inapplicable, and we illucidated on the meaning of this statute:

> "* * * The above statute covers a situation where the *same act* is punishable in different ways under different sections of the law. Under such a situation, he can be punished for only one offense. *Burglary and theft are two separate and distinct acts.* * * * We have had occasion to construe the aforementioned section of the statute and *held in effect that for the section to operate to prevent double punishment, the two alleged crimes must have identical components.* State v. Westbrook, 79 Ariz. 116, 285 P.2d 161, 53 A.L.R.2d 619. * * *" [Emphasis added.]

For other cases construing this statute see State v. Jacobs, 93 Ariz. 336, 380 P.2d 998; and State v. Martinez, 67 Ariz. 389, 198 P.2d 115.

■■■ Robbery, mayhem, and assault with intent to commit murder, all have different elements. The crime of mayhem was the act of gouging out Mr. Peterson's eye. This crime was complete when defendant proceeded to perpetrate his next violent act by strangling Mrs. Peterson, and thereby committing another distinct criminal act. Robbery was still another, because it required the taking of property, thus requiring a criminal component not found in the other two crimes.

■■■ Defendant relies on State v. Harvey, 98 Ariz. 70, 402 P.2d 17. However, it is distinguishable. In Harvey, the defendant was convicted of statutory rape and lewd and lascivious acts. This Court reversed upon the grounds that § 13–1641, A.R.S., applied. In that case, *one act,* that of sexual intercourse with a 14-year-old girl, gave rise to two possible crimes, and the State was forced to choose. In the instant case, there were three defined acts, giving rise to three crimes. The time span in which the acts were committed is immaterial, as long as the State can prove each act was composed of the necessary criminal elements. § 13–1641 is not applicable in the instant case.

■■■ Defendant next attacks the trial court's decision to admit fingerprint records and a record of a prior conviction. Defendant, however, fails to cite any authority. In State v. Pennye, 104 Ariz. 146, 449 P.2d 611, we held that Rule 44(g), Rules of Civil Proc., 16 A.R.S., controls the admissibility of such records. It suffices to say that a review of the transcript of the trial, in addition to an examination of all the exhibits, shows that the requirements of 44(g) were adhered to. The records were properly admitted as copies of official records.

Defendant next argues that it was error for the trial judge to allow the jury to deliberate in the courtroom where there was a set of Arizona Revised Statutes, and also a telephone connected to an outside line. He does not allege they were actually used, but argues that the mere access to these articles is sufficient to amount to a prejudicial error. The general rule is stated in "Lawbook—In Jury Room," 54 A.L.R.2d 710, 712. It states:

> "* * * Most of the jurisdictions in which the question has arisen proceed on the basis, more often implied than expressed, *that prejudice to the complaining party must affirmatively appear* in order to require or justify a reversal or a new trial. * * *" [Emphasis added.]

■■■ The trial court admonished the jury not to use the telephone or the books.

When there are no facts indicating that a juror looked at the books, the appellate court will not reverse merely on the grounds that they were available. San Nicolas v. Government of Guam, 9th Cir., C. A., 325 F.2d 781; State v. Blakely, Mo. Sup., 24 S.W.2d 1020. This same rule which applied to lawbooks should logically apply to a telephone, and we therefore hold no reversible error was committed.

Defendant also contends that "Assault with a deadly weapon" and "Aggravated Assault" are included in the offense of "Assault with Intent to Commit Murder," and that it was therefore necessary for the court to instruct the jury in regard to both "Assault with a Deadly Weapon" and "Aggravated Assault." This Court has repeatedly held that instructions on lesser offenses are justified only when there is evidence upon which the jury could convict of the lesser offense, and at the same time find that the State had failed to prove an element of the greater crime. State v. Madden, 104 Ariz. 111, 449 P.2d 39; State v. Schroeder, 95 Ariz. 255, 398 P.2d 255; People v. Finch, 213 Cal.App.2d 752, 29 Cal.Rptr. 420; State v. Callihan, 11 Ohio App.2d 23, 227 N.E.2d 654; Fleming v. State, Okl.Cr., 401 P.2d 997.

The question then is whether the facts in this case would justify such an instruction on "Assault with a Deadly Weapon" or "Aggravated Assault." The only defense presented by defendant was that in regard to identification. He relied solely upon the testimony of one officer in his attempt to show a discrepancy in the identification of defendant by the Petersons.

An examination of the testimony shows that defendant at the very outset pointed a gun at Mr. Peterson. Mr. Peterson testified:

"He said, 'One word out of you and she's dead.'"

Mr. Peterson's testimony describes well the events which followed:

"Then he come over to me and took hold of the hair of my head and drew me up and with a knife lunged it into my eye, this left eye, and dug it out.

\* \* \* \* \* \*

"Stabbed, turned it, lunged the knife through this lower eyelid here.

\* \* \* \* \* \*

"Right down into the eye and then stirred it."

Mrs. Peterson's testimony was as follows, in part:

"And then he put a gag in my mouth and tied my nose and mouth real tight around with another gag.

\* \* \* \* \* \*

"And he put a belt around my neck.

\* \* \* \* \* \*

"He just kept pulling it tighter and tighter until I passed out."

Mr. Peterson tells what happened after defendant was finished with Mrs. Peterson:

"\* \* \* Before he left, he come around to the bed \* \* \* and I was in bad shape, and also took ahold of the hair of my head again, and lunged that knife into the eye again."

Defendant having threatened Mrs. Peterson's life in the event her husband spoke "one word" showed that he was from the very beginning giving consideration to the necessity of taking her life to prevent an outcry. What reason would he have for using a belt to choke her if not to take her life? The fact that he choked her until she was unconscious was evidence that the object of the choking was to take her life. These are the only conclusions which a jury could arrive at if it found this testimony true which was uncontradicted.

Defendant had stuck a knife in Peterson's eye and twisted it. Peterson was bleeding. This had been done twice to his eye; he was tied and gagged. Defendant could have well believed that with this kind of injury Peterson would soon bleed to death or die from shock, and it was necessary that he kill Mrs. Peterson in order that she could not testify against him in

**370**

the robbery and the killing of her husband. This shows both intent and motive.

 Therefore, under the defense of defendant, which was lack of identification, the only verdicts the jury could have returned were those of "guilty of assault with intent to commit murder," or "not guilty."

Counsel for defendant contends that it was error for the court to in effect tell the jury that a person of sound mind is presumed to have intended the natural and probable consequence of every act deliberately done. This is certainly a correct statement of the law. No other conclusion can be reached than that the use of a belt to choke a person into unconsciousness was intentional. The belt would have produced death if the choking had been protracted for a sufficient length of time.

In State v. White, 102 Ariz. 97, 425 P.2d 424, we said:

"Generally, the intent with which a crime or act is committed may be implied from the facts that establish the doing of the act, and a specific intent may at times be presumed from the conduct of the accused in the doing of an act, as in cases involving an intent to kill. * * *"

We find no error in the giving of the instruction. The evidence was sufficient to support the verdict.

Reversal is urged upon the ground that the sentence is repugnant to Section 15, Article II, Arizona Constitution, which states that "cruel and unusual punishment [shall not be] inflicted."

The sentence was within the statutory limits. Even defendant readily admits that as long as the punishment is within those limits, it will not be disturbed upon appeal without a conclusive showing of abuse of discretion. State v. Miranda, 98 Ariz. 11, 401 P.2d 716; State v. Morris, 97 Ariz. 417, 401 P.2d 147; State v. Buckmaster, 94 Ariz. 314, 383 P.2d 869; State v. Quintana, 92 Ariz. 308, 376 P.2d 773; and State v. Moody, 67 Ariz. 74, 190 P.2d 920. In State v. Benn, 101 Ariz. 252, 418

P.2d 589, the Court also stated two criteria for determining if discretion has been abused:

"* * * inquiry must be made into the circumstances of the offense charged and the moral character and past conduct of the defendant, as appears from the record of the case. * * *"

Defendant, in his brief in propria personam, makes assertions of error such as the charge of perjury by the witnesses, Mr. and Mrs. Peterson. These are not supported by sufficient facts and law to justify consideration in this decision.

Judgment affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and HAYS, JJ., concur.