944 P.2d 1222

STATE of Arizona, Appellee,

v.

Chad Alan LEE, Appellant.

No. CR–94–0367–AP.

Supreme Court of Arizona,
En Banc.

Aug. 26, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Mona Peugh–Baskin, Assistant Attorney General, Phoenix, for Appellee.

Sandra Burt, Phoenix, for Appellant.

## OPINION

JONES, Vice Chief Justice.

Chad Alan Lee (defendant) was convicted of first degree murder and armed robbery. He was sentenced to death for the murder and to a term in prison for the armed rob-

bery. In separate proceedings, Lee was tried and convicted of two other murders; our disposition of that appeal is published in a separate, simultaneous opinion. *State v. Lee*, 189 Ariz. 590, 944 P.2d 1204 (1997) (hereafter *Lee I* ).

This is an automatic appeal of the convictions and sentences pursuant to Rules 26.15 and 31.2, Arizona Rules of Criminal Procedure. We have jurisdiction pursuant to article VI, section 5(3) of the Arizona Constitution and A.R.S. § 13–4031. We affirm the convictions and sentences.

## FACTS

Around 1:00 a.m. on April 27, 1992, defendant Lee entered an AM–PM market to purchase some cigarettes. After the store clerk, Harold Drury, opened the cash drawer, defendant displayed his revolver and shot Drury in the shoulder, causing him to fall slightly backwards. Defendant then shot Drury in the top of the head, the forehead, the cheek, and the neck. Drury slumped to the floor. Defendant walked around the counter and shot Drury two more times in the right temple. One bullet went through Drury's head and broke the display case next to his body. Defendant picked up the cigarettes, took the entire cash drawer from the register, and left the store. Scott Hunt was in defendant's car waiting to leave the scene.

Hunt immediately drove defendant across the street where defendant removed the cylinder from his revolver and threw both parts into a dumpster. Hunt then drove for several miles, and defendant attempted to throw the cash drawer into a creek bed. The drawer, however, smashed into a concrete abutment on the overpass, prompting defendant and Hunt to go back, pick up the drawer, and throw it into the creek bed.

Shortly after the murder, customers found Drury behind the counter and called the police. Upon entering the store, the police saw the cash register open and the cash drawer missing. The register tape showed an incomplete transaction for cigarettes.

During three separate interviews, defendant confessed to robbing the AM–PM market and shooting Drury: May 4, 1992, at 2:45 a.m. at the Coconino County Jail where defendant was in custody for other crimes; May 5, 1992, when defendant showed police where he had disposed of the Reynolds (*Lee I* ) murder weapons; and May 6, 1992, at the Maricopa County Sheriff's Office in Phoenix where the interview was recorded.

During the first interview, defendant described to detectives where the drawer first landed and where he eventually threw it into the creek bed. On their return to Phoenix, the detectives located the pieces of the cash drawer and the drawer itself in the weeds under the bridge that defendant identified. They photographed each scene and preserved the evidence.

## PROCEDURAL HISTORY

The Maricopa County Grand Jury charged defendant with a twelve-count indictment for the murders of Linda Reynolds, David Lacey, and Harold Drury. The trial court severed the counts involving Reynolds and Lacey (*Lee I* ) from the counts involving Drury (*Lee II* ). Defendant was charged with armed robbery and first degree murder in the case at bar. In the *Lee I* trial, defendant was convicted of two counts of first degree murder for the killings of Reynolds and Lacey.

Pursuant to Rule 609, Arizona Rules of Evidence, the state moved to impeach defendant with his prior convictions in the event he testified at trial. The trial court granted that motion in part, permitting impeachment with defendant's prior felony convictions without reference to the nature of the offenses. The state also moved, pursuant to Rule 404(b), Arizona Rules of Evidence, for permission to introduce evidence regarding the circumstances of the Reynolds and Lacey murders, arguing that the evidence was probative of defendant's defense of lack of intent. The trial court denied that motion "except for purposes of impeachment, if in fact the defendant 'opens the door.' "

Defendant did not testify at trial. The jury found him guilty of armed robbery and first degree murder with unanimous guilty verdicts for both felony murder and premeditated murder. The trial court sentenced de-

fendant to death for the murder and to a consecutive twenty-one-year aggravated term for the armed robbery conviction. The court found the following aggravating circumstances under A.R.S. § 13–703(F) for the death sentence: (F)(1) previous death-eligible convictions for the Reynolds and Lacey murders, (F)(2) previous violent felonies, (F)(5) pecuniary gain, and (F)(6) offense committed in an especially cruel, heinous, or depraved manner (finding heinousness and depravity). The court found defendant's age, lack of significant prior criminal history, and deprived childhood to be mitigating circumstances.

### ISSUES

Defendant has raised twelve trial issues on appeal and also challenges findings of aggravation and mitigation related to both his death and armed robbery sentences. In *Lee I*, we discussed and rejected four of the trial issues: lack of voluntariness of defendant's statements, failure to appoint second counsel, failure to close proceedings to the media, and improper use of a *"Wussler-type"* instruction for lesser included offenses. 189 Ariz. at 602, 944 P.2d at 1216. We also rejected defendant's arguments regarding four miscellaneous issues: consideration of victim impact evidence in sentencing, right to jury trial at sentencing hearing, death by lethal gas constituting cruel and unusual punishment, and the constitutionality of Arizona's statutory scheme for imposition of the death penalty. *Id.* at 607, 944 P.2d at 1221. We reject these arguments here as well.

### A. Trial Issues

#### 1. Blood Spatter Witness

Defendant argues that the trial court erred in permitting, over objection, a Phoenix Police Department detective, who is also a forensic artist and reconstructionist, to testify as an expert. At trial, defendant argued that the detective did not have sufficient background to testify as a blood spatter expert and that his opinion was not supported by adequate foundation. He further argued that the probative value of the detective's testimony was outweighed by its prejudicial effect.

This court has previously ruled on the use of experts:

> Under Rules [of Evidence] 702, 703, and 403, expert testimony must (1) come from a qualified expert, (2) be reliable, (3) aid the triers of fact in evaluating and understanding matters not within their common experience, and (4) have probative value that outweighs its prejudicial effect.

*State v. Moran,* 151 Ariz. 378, 380–81, 728 P.2d 248, 250–51 (1986) (citing *State v. Chapple,* 135 Ariz. 281, 291, 660 P.2d 1208, 1218 (1983)); *see State v. Bolton,* 182 Ariz. 290, 304, 896 P.2d 830, 844 (1995). A witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Ariz. R. Evid. 702. "Whether a witness possesses sufficient qualifications to testify as an expert is a matter within the trial court's discretion and that determination will not be upset on appeal in the absence of clear abuse." *State v. Saez,* 173 Ariz. 624, 630, 845 P.2d 1119, 1125 (App.1992) (citing *State v. Dixon,* 153 Ariz. 151, 155, 735 P.2d 761, 765 (1987)); *see also State v. Hyde,* 186 Ariz. 252, 276, 921 P.2d 655, 679 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1091, 137 L.Ed.2d 224 (1997).

■ a. *Qualifications.* At trial, the detective testified that he had the following training and qualifications: twenty one years of service with the Phoenix Police Department, fifteen as a homicide detective; training in ballistics and reconstruction of human remains; basic and advanced homicide courses; an eighty-hour course at the FBI Forensic Art School in Quantico, Virginia; a thirty-hour course in composite art; and thirty two hours in introductory and advanced blood spatter courses. The blood spatter courses were taught by a nationally recognized blood spatter expert whom the trial judge had qualified on two prior occasions.

Defendant claims the detective's blood spatter training was insufficient because (1) the training activities involved mannequins and animal blood instead of actual crime scenes and (2) the detective attended "only" thirty two hours of formal training.

Our research reveals no Arizona appellate cases that establish qualifications for blood spatter expert witnesses. This court has found, however, that a detective's experience was sufficient to qualify him as an expert in footprint comparison where his background included extensive tracking in criminal investigations, qualifying in both federal and state courts as an expert, training from an experienced Department of Public Safety Officer, teaching classes in tracking and footprint comparison, determinations of matches on hundreds of occasions, and reading articles. *State v. Murray*, 184 Ariz. 9, 29, 906 P.2d 542, 562 (1995), *cert. denied*, — U.S. —, 116 S.Ct. 2535, 135 L.Ed.2d 1057, *and cert. denied*, — U.S. —, 117 S.Ct. 193, 136 L.Ed.2d 130 (1996). Detective Hodges had perhaps slightly less experience but more formal training than did the detective in *Murray*. After consideration, we conclude that the trial court did not abuse its discretion in finding the detective qualified as a blood spatter expert.

■ b. *Reliability.* Defendant claims the detective's testimony was not reliable because it contradicted that of the medical examiner who conducted the autopsy. The medical examiner described the shoulder injury as "a shrapnel wound," and the detective suggested that the injury was caused by "some type of snake shot or shot shell." The trial court asked the detective whether his opinion on the cause of the shoulder injury differed from that of the medical examiner. The detective replied that his opinion differed "in a very precise definition of shrapnel." The medical examiner described multiple tears or cuts in the skin surfaces, some of which had metal in them at the time of autopsy. The detective found the small metal fragments to be "characteristic of a snakeshot type load in possibly a hand gun or long rifle." On consideration, we conclude that the two interpretations are not contradictory. A photographic exhibit clearly illustrated to the jury how the "shrapnel" injury appeared.

Defendant also argues the detective contradicted the medical examiner regarding the sequence and trajectories of the shots. The medical examiner testified that he did not attempt to attribute a sequence to the shots and that he did not go to the crime scene. Thus, the medical examiner's testimony is consistent with the detective's testimony on this point as well.

■ c. *Aid to the Jury.* The detective's testimony aided the jurors in synthesizing crime scene evidence with autopsy evidence. His testimony helped the jurors understand the likely sequence of the shots and the locations of the victim and gunman during the shooting. This information was directly relevant to determining premeditation.

■ d. *Weighing of Probative Value and Prejudicial Effect.* Defendant claims the state's real purpose in calling the detective to testify was to show the gruesomeness of the murder. Our review of the record reveals that the detective's testimony itself did not use inflammatory language, nor did it focus on the gruesomeness of the murder. The testimony was relevant in determining premeditation and was not cumulative because the detective was the only expert who analyzed the victim's bullet wounds in the context of the crime scene. We therefore find that the trial court did not abuse its discretion by permitting the detective to testify as an expert.

### 2. Autopsy and Blood Spatter Photographs

■ Defendant contends that the trial court abused its discretion by admitting in evidence four autopsy photographs and three blood spatter photographs.

In an earlier pronouncement, we explained:

The admissibility of photographic exhibits is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. To be admissible into evidence, photographs must be relevant. When the photographs, however, have the tendency to incite passion or inflame the jury, "the court must go beyond the question of relevancy and consider whether the probative value of the exhibit outweighs the danger of prejudice created by admission of the exhibit."

*Bolton*, 182 Ariz. at 305, 896 P.2d at 845 (citations omitted); *see also State v. Jones,*

185 Ariz. 471, 485, 917 P.2d 200, 214 (1996); *State v. Gulbrandson,* 184 Ariz. 46, 60, 906 P.2d 579, 593 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2558, 135 L.Ed.2d 1076 (1996).

Defendant argues the autopsy photographs were irrelevant because the cause of death was not disputed and because the pictures did not prove premeditation. The state contends that the autopsy photographs were relevant to show the location, size, and shape of the bullet wounds, thus illustrating the expert testimony of the medical examiner and the police detective. Defendant claims the autopsy photographs were gruesome, but the state argues the photographs were not gruesome because they did not include unnecessary parts of the victim's body and the wounds and surrounding skin were cleansed of any excess blood and brain tissue.

▪ Defendant further contends that the blood spatter photographs were irrelevant and cumulative and were introduced solely to demonstrate the gruesomeness of the crime. The state counters by explaining that the photographs aided jurors in understanding testimony regarding the characteristics and location of blood spatter in order to determine sequence and order of shots.

The trial court found the photographs relevant and not particularly gruesome. After viewing the photographs and related testimony, we conclude similarly that the record demonstrates this finding was not an abuse of discretion. The photographs were relevant and their probative value outweighed any possible tendency to incite passion or inflame the jury.

### 3. Sufficient Evidence to Deny Judgment of Acquittal

▪ Defendant argues that the trial court erred by denying defense counsel's motion for a judgment of acquittal on grounds of insufficient evidence. A judgment of acquittal is required if no substantial evidence warrants conviction. Ariz.R.Crim.P. 20(a); *State v. Hill,* 174 Ariz. 313, 318, 848 P.2d 1375, 1380 (1993). " 'Substantial evidence' is evidence that reasonable persons could accept as adequate and sufficient to support a conclusion of the defendant's guilt beyond a

reasonable doubt." *State v. Jones,* 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). When reasonable minds may differ on inferences from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal. *State v. Landrigan,* 176 Ariz. 1, 4, 859 P.2d 111, 114 (1993).

▪ When the evidence supporting a verdict is challenged on appeal, an appellate court will not reweigh the evidence. The court must view the evidence in the light most favorable to sustaining the conviction, and, because the jury has returned its verdict and presumptively followed instructions, all reasonable inferences will be resolved against a defendant. *State v. Tison,* 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981).

▪ Defendant argues that the only evidence linking him to the Drury armed robbery and murder was his knowledge of the cash drawer and his admissions to police on May 4, 5, and 6. Defendant notes that police found none of his fingerprints at the crime scene or on the cash drawer, although no evidence indicates that he wore gloves. Further, no weapon was retrieved, and there is no proof that any money in fact was taken from the market.

Defendant's three separate confessions, however, contained specific details that were corroborated by physical evidence at the crime scene. He admitted that he was in the area where Hunt's former girlfriend lived, six or seven blocks from the market, on the day of the murder. He stated that Drury was "an older white man," that defendant asked for cigarettes, and that he grabbed the entire cash drawer. At the crime scene the entire cash drawer was missing, and the register tape showed an incomplete transaction for cigarettes.

Defendant's description of the route that he and Hunt took following the robbery corresponds with the actual locations of the market and creek bed. Pieces of the cash drawer and the drawer itself were found where defendant said he threw them. The criminalist testified that smudges but no usable fingerprints were on the cash drawer,

explaining that exposure to the elements would lessen the likelihood of recovering usable prints.

We therefore conclude that the trial court properly found that the record contained substantial evidence to support the convictions.

### 4. Prosecutorial Misconduct

 Defendant argues that the trial court abused its discretion by denying his motion for a mistrial based on claims of prosecutorial misconduct. The trial court's decision whether to grant a mistrial because of prosecutorial misconduct should not be disturbed on appeal in the absence of a clear abuse of discretion by the trial court. *State v. White*, 160 Ariz. 24, 33–34, 770 P.2d 328, 337–38 (1989); *see also State v. Atwood*, 171 Ariz. 576, 611, 832 P.2d 593, 628 (1992) (stating that trial court is in better position to judge effect of prosecutor's comments on jury) (citing *State v. Hansen*, 156 Ariz. 291, 297, 751 P.2d 951, 957 (1988)). The trial court should consider (1) whether the prosecutor's statements called jurors' attention to matters the jury was not justified in considering in determining its verdict, and (2) the probability that the jurors were in fact influenced by the remarks. *Atwood* at 611, 832 P.2d at 628 (citing *Hansen* at 296–97, 751 P.2d at 956–57). Prosecutorial misconduct sufficient to justify reversal must be " 'so pronounced and persistent that it permeates the entire atmosphere of the trial.' " *Id.* (quoting *United States v. Weinstein*, 762 F.2d 1522, 1542 (11th Cir.1985) (quoting *United States v. Blevins*, 555 F.2d 1236, 1240 (5th Cir.1977))).

 Ruling on a pretrial motion, the trial court granted the state permission to impeach with defendant's prior felony convictions without reference to the nature of the offenses and denied permission to admit evidence of the Reynolds and Lacey murders "except for purposes of impeachment, if in fact the 'defendant opens the door.' " Defendant claims that the prosecutor and three witnesses made nine references to an "unrelated case" or "unrelated matter" that involved defendant and the Reynolds murder, the Lacey murder, or a Flagstaff armed rob-

bery. In another instance, the prosecutor clarified that an unrelated case had "absolutely nothing to do with Chad Lee at all." Defendant claims this statement emphasized that the other "unrelated cases" did involve the defendant. At the conclusion of the state's evidence, defense counsel moved for a mistrial, claiming these impermissible inferences from the Reynolds/Lacey case tainted the jury and prejudiced defendant. The trial court found that the references were few in number and not prejudicial.

Explaining to the jury how police investigated the AM–PM robbery and Drury murder necessarily involved some reference to defendant's other crimes. Prosecution's references to "unrelated matters" were as limited as possible under the circumstances and did not "permeate the entire atmosphere of the trial." Therefore, we hold there was no abuse of discretion by the trial judge in denying defendant's motion for mistrial based on prosecutorial misconduct.

### 5. Separate Trial Court for Sentencing

 Defendant argues that the trial court erred when it refused to assign two separate sentencing courts to sentence defendant as a result of his convictions in the two trials, *Lee I* and *Lee II*. He contends that in sentencing for the convictions related to the Drury murder and robbery, the court in the instant case may have been prejudiced by evidence relating to the Reynolds and Lacey murders, and that had the court known only of the previous death sentences, without the details of the murders, the court may have considered the mitigating circumstances more favorably. Defendant shows no evidence that he was denied an impartial sentencer, nor does he cite persuasive authority.

 Trial judges "are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona*, 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990); *State v. Stokley*, 182 Ariz. 505, 519, 898 P.2d 454, 468 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 787, 133 L.Ed.2d 737 (1996). The fact that a trial judge presides at a resentencing hearing for a case in which he presided at the original sentencing is not

evidence of bias or prejudice. *State v. Rossi,* 154 Ariz. 245, 248, 741 P.2d 1223, 1226 (1987), *appeal after remand,* 171 Ariz. 276, 830 P.2d 797 (1992).

Defendant argues that his young age, deprived childhood, and compliant "follower" personality call for leniency in spite of the aggravating circumstances and that "fresh" consideration of the mitigating circumstances may not have resulted in a death sentence. Defendant has not, however, shown actual bias or prejudice on the part of the trial judge. Further, our independent review of aggravating and mitigating circumstances corroborates the trial judge's findings. Therefore, the trial court did not err by refusing to assign separate sentencing courts to sentence defendant.

### 6. Restraint of Defendant During Trial

■ Defendant argues that the trial court erred by shackling him during trial because he took copious notes during *Lee I* and shackling his hands affected his ability to participate in the Drury trial. Complying with defendant's request, the court ordered that he be restrained with a leg brace in lieu of a hobble and that he be allowed one free hand to use a short pencil for assisting counsel during trial.

■ "Whether a defendant will be shackled is within the sound discretion of the trial court." *State v. Bracy,* 145 Ariz. 520, 532, 703 P.2d 464, 476 (1985). Courtroom security is within the discretion of the trial court " 'absent incontrovertible evidence' " of harm to the defendant. *State v. McKinney,* 185 Ariz. 567, 576, 917 P.2d 1214, 1223, *cert. denied,* —— U.S. ——, 117 S.Ct. 310, 136 L.Ed.2d 226 (1996) (quoting *State v. Boag,* 104 Ariz. 362, 366, 453 P.2d 508, 512 (1969)). When the trial court's decision to restrain a defendant is supported by the record, this court will uphold the decision, even when the jury sees the restraints. *Id.* The trial court may consider past felony convictions for crimes of violence as well as prior escapes in deciding whether to shackle a defendant. *Bracy* at 532, 703 P.2d at 476.

Here, the defendant had prior convictions for three armed robberies and two first de-

gree murders. Further, the record shows that defendant received a head injury as a result of attacking a deputy and attempting escape from a holding cell before coming to court for the first day of trial and jury selection. The record clearly supports the trial court's decision to restrain the defendant, and we find no abuse of discretion.

### 7. Death Qualifying Jurors

■ Defendant argues that the trial court erred by death qualifying members of the venire and dismissing potential jurors who indicated they were opposed to the death penalty. This court rejected that argument in *State v. Willoughby,* 181 Ariz. 530, 546, 892 P.2d 1319, 1335 (1995) (no violation of Sixth Amendment right to fair and impartial jury where prospective jurors were questioned regarding their views on death penalty and two were excused after they said they could not convict at all, knowing that judge might order death sentence), *cert. denied,* —— U.S. ——, 116 S.Ct. 725, 133 L.Ed.2d 677 (1996).

### 8. Use of Prior Conviction for Impeachment

Defendant argues that the trial court erred when it ruled that defendant's prior convictions would be admissible for impeachment if he testified. Pursuant to Arizona Rules of Evidence 609, the trial court granted the state permission to introduce defendant's prior felony convictions to attack his credibility if he elected to testify, but the state was precluded from identifying the nature of the offenses for which he was convicted. Defendant, as a result, chose not to testify.

■ If a defendant chooses not to testify at trial, he waives the right to challenge the trial court's ruling on the admissibility of a prior conviction. *Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984); *State v. Schrock,* 149 Ariz. 433, 437, 719 P.2d 1049, 1053 (1986). This issue was therefore waived on appeal.

### B. Sentencing Issues

■ In death sentence appeals, we determine independently whether the aggravating

circumstances have been proven beyond a reasonable doubt, consider any mitigating circumstances, and then weigh the aggravating and mitigating circumstances to decide whether the mitigating circumstances are sufficiently substantial to call for leniency. *Stokley,* 182 Ariz. at 516, 898 P.2d at 465 (citing *State v. Brewer,* 170 Ariz. 486, 500, 826 P.2d 783, 797 (1992)); A.R.S. § 13–703.01.

### 1. Aggravating Circumstances

a. *Finding Defendant Had Been Previously Convicted of a Felony Involving the Threat or Use of Violence*

▪ Defendant claims that the trial court erred by finding the A.R.S. § 13–703(F)(2) aggravating circumstance based on convictions for offenses committed after the Drury murder. The trial court based its (F)(2) finding on defendant's Coconino County convictions for aggravated robbery and aggravated assault, crimes that defendant committed after the murders, but for which he was convicted before the murder convictions. Defendant also raised this argument in his appeal of the convictions and sentences for the Reynolds and Lacey murders, and this court rejected it. *See Lee I,* 189 Ariz. at 604, 944 P.2d at 1218. "Convictions entered prior to a sentencing hearing may thus be considered regardless of the order in which the underlying crimes occurred or the order in which the convictions were entered." *State v. Gretzler,* 135 Ariz. 42, 57 n. 2, 659 P.2d 1, 16 n. 2 (1983) (citations omitted); *see also State v. Walden,* 183 Ariz. 595, 615–16, 905 P.2d 974, 994–95 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996); *State v. Williams,* 183 Ariz. 368, 382–83, 904 P.2d 437, 451–52 (1995).

Section 13–703(F)(2) requires the sentencing court to consider as an aggravating circumstance that "defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person." [1] To satisfy (F)(2), the prior conviction must be a felony that by its statutory definition involves violence or the threat of violence on another person. *State v. McKinney,* 185 Ariz. 567, 581, 917 P.2d 1214, 1228, *cert. denied,* —— U.S. ——, 117 S.Ct. 310, 136 L.Ed.2d 226 (1996); *State v. Romanosky,* 162 Ariz. 217, 228, 782 P.2d 693, 704 (1989); *State v. Gillies,* 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983).

▪ In 1992 defendant was convicted of aggravated robbery, a class 3 felony, in violation of A.R.S. §§ 13–1902 and –1903, and aggravated assault, a class 3 dangerous felony, in violation of A.R.S. §§ 13–1203(A)(2) and –1204(A)(2). Robbery, as defined in section 1902, involves threat or use of force. Section 13–1203(A)(2) defines assault as "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury," and section 13–1204(A)(2) requires use of a deadly weapon or dangerous instrument. The statutory definitions of both convictions therefore involve violence or the threat of violence. Accordingly, the trial court properly found an (F)(2) aggravating circumstance for the Drury murder based on the Coconino County convictions for aggravated robbery and aggravated assault.

b. *Finding that the Drury Murder Was Committed in an Especially Heinous and Depraved Manner*

▪ Defendant argues that the circumstances the trial court considered in finding that the Drury murder was committed in an especially heinous and depraved manner do not set this case apart from the usual murder case. In its special verdict, the trial court stated that the murder was senseless because Drury was alone and unarmed; therefore, killing was unnecessary to accomplish the robbery. The trial court also found that the murder involved gratuitous violence because defendant shot Drury six or seven times.[2]

▪ This court will reverse a finding of aggravation under A.R.S. § 13–703(F)(6) (offense committed in an especially heinous, cruel, or depraved manner) where no specific

---

**1.** Although the statute has been amended, this is the wording that was in effect when Lee committed these murders.

**2.** Expert testimony described six bullet wounds in addition to the "shrapnel" shoulder injury.

factors separate the crime from the norm of first degree murders. *Gretzler,* 135 Ariz. at 53, 659 P.2d at 12. "Senselessness and helplessness clearly apply. However, these factors absent additional aggravation, are usually insufficient alone to establish heinousness or depravity." *State v. Roscoe,* 184 Ariz. 484, 500, 910 P.2d 635, 651 (1996).

"A murder is senseless if it is unnecessary for the defendant to complete his objective." *State v. Hyde,* 186 Ariz. at 281, 921 P.2d at 684 (citing *State v. Ross,* 180 Ariz. 598, 605, 886 P.2d 1354, 1361 (1994)). Here, Drury was unarmed, but defendant claims Drury tried to grab his gun. The evidence indicates defendant shot Drury in the left shoulder, causing him to fall backward. That shot may have disabled Drury enough for defendant to complete his objective, but if not, when Drury slumped to the floor, defendant could have removed the cash drawer and left the market. Although the sequence of shots is not conclusive, at least two of the shots to the head were disabling but not fatal. The circumstances indicate the killing was senseless because defendant unquestionably did not need to murder Drury to complete his objective.

Gratuitous violence alone may demonstrate a heinous or depraved state of mind and includes inflicting wounds beyond those necessary to kill. *Gretzler* at 52, 659 P.2d at 11. After shooting Drury in the shoulder, cheek, neck, and top of the head, defendant lifted the counter top, walked around the counter, and fired two shots into Drury's right temple, just above the ear. One of the bullets went through Drury's head and into the glass cabinet next to where Drury was sitting. Because the shot downward into the top of Drury's head was unquestionably fatal, defendant's actions—lifting the counter top, walking around the counter, and firing two more shots into Drury's temple—constituted gratuitous violence. Accordingly, because defendant's conduct was both senseless and gratuitously violent, we find ample evidence to separate this crime from the norm of first degree murders and therefore affirm the trial court's finding of an aggravating circumstance under A.R.S. § 13–703(F)(6).

## 2. Mitigating Circumstances

Defendant argues here, as in his appeal of the convictions and sentences in *Lee I,* that this court should reweigh the aggravating and mitigating circumstances, giving more weight to the mitigating circumstances than did the trial court. Defendant also contends the trial court erred by failing to find post-arrest cooperation and remorse as mitigating factors as in the sentencing for the *Lee I* murder convictions.

In the *Lee I* special verdict the court found mitigating circumstances without distinguishing between the Reynolds and Lacey killings. The trial court found post-arrest cooperation and defendant's assistance in the recovery of weapons as a mitigating circumstance because defendant had accompanied law enforcement officials into the forest and shown them where he had hidden the weapons used to kill Reynolds. In *Lee II* we find defendant's responses to police questioning regarding Drury's murder to be an insignificant mitigating circumstance. The trial court in *Lee I* also found remorse as a mitigating circumstance, but the only evidence of remorse relates to Reynolds' death. We find neither post-arrest cooperation nor remorse related to the Drury murder to be a mitigating circumstance.

Even if this court were to find both remorse and cooperation as mitigating circumstances with respect to the Drury murder, the mitigators considered as a whole are not sufficient to call for leniency when compared to the aggravators related to the crime. We concur with the trial court:

> In fact, even if this court were to consider every one of the factors proposed by defendant as a mitigating circumstance, when balanced against the aggravating factors of the heinousness and depravity of the murder of Harold Drury and the factor that Drury's murder came shortly after Linda Reynolds' and David Lacey's murders, those mitigating circumstances would not be sufficiently substantial to call for leniency.

## 3. Summary of Findings on Aggravation and Mitigation

We have independently reviewed and weighed the aggravating and mitigating

**620**

circumstances related to the Drury murder. We find that the state proved the following aggravation beyond a reasonable doubt: (a) previous death-eligible conviction, (b) previous violent felony, (c) pecuniary gain, and (d) that the murder was committed in an especially heinous and depraved manner. *See* A.R.S. §§ 13–703(F)(1), (2), (5), (6). We further find that defendant has proved the following mitigation by a preponderance of the evidence: (a) age, (b) lack of significant prior criminal history, and (c) deprived childhood. Based upon our independent assessment and reweighing of all circumstances, both aggravating and mitigating, we conclude that the mitigating circumstances do not achieve the qualitative level requisite for leniency.

### 4. Aggravated Term of Imprisonment for Armed Robbery Conviction

In determining defendant's armed robbery sentence, the trial court considered the following aggravating circumstances: (1) the crime was committed for pecuniary gain, (2) defendant was previously convicted of armed robbery in Coconino County and for two other murders, (3) the armed robbery resulted in a violent death, (4) defendant blamed the victim for the fact that he was killed, and (5) defendant had committed two other armed robbery murders shortly before this one. The trial court considered defendant's age and lack of significant prior criminal history as mitigating circumstances. As a result, the trial court sentenced defendant to the maximum term, twenty one years.

Defendant argues that (1) the trial court should not have considered his Coconino County convictions because the crimes were committed after the Drury offenses, and (2) the trial court erred by finding pecuniary gain as an aggravating factor because it is an element of armed robbery.

■ **Prior Crimes.** The trial court may consider as aggravating circumstances prior convictions for offenses "regardless of the order in which the underlying crimes occurred or the order in which the convictions were entered." *Gretzler,* 135 Ariz. at 57 n. 2, 659 P.2d at 16 n. 2 (regarding death sentence); *see also Williams,* 183 Ariz. at 383, 904 P.2d at 452 ("That a defendant had been

found guilty of other lawless acts of violence is relevant to his character, whether the acts occurred before or after the murder."). Because defendant was convicted in Coconino County before he was sentenced for the Drury armed robbery, the trial court properly considered those convictions as an aggravating circumstance during sentencing.

■ **Double–Counting Pecuniary Gain.** The legislature may establish a sentencing scheme in which an element of a crime could also be used for enhancement and aggravation purposes. *State v. Lara,* 171 Ariz. 282, 285, 830 P.2d 803, 806 (1992) (vacating, because of "healthy respect for *stare decisis,*" court of appeals' holding that essential and irreducible element of crime cannot serve to aggravate crime it defines). Further, this court has stated that pecuniary gain is not synonymous with robbery. *State v. Schad,* 163 Ariz. 411, 420, 788 P.2d 1162, 1171 (1989) (reviewing death sentence), *aff'd,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); *State v. Carriger,* 143 Ariz. 142, 161, 692 P.2d 991, 1010 (1984) (reviewing death sentence). In *Carriger,* this court explained, "To prove robbery, the state must show a *taking* of property from the victim; to prove pecuniary gain, the state must show the actor's *motivation* was the expectation of pecuniary gain." 143 Ariz. at 161, 692 P.2d at 1010 (citations omitted) (emphasis in original). This court has rejected the argument that finding pecuniary gain as an aggravating circumstance is unconstitutional where it repeats an element of first degree felony murder based on an underlying armed robbery. *State v. Kemp,* 185 Ariz. 52, 65, 912 P.2d 1281, 1294, *cert. denied,* — U.S. —, 117 S.Ct. 117, 136 L.Ed.2d 68 (1996); *State v. Greenway,* 170 Ariz. 155, 163–65, 823 P.2d 22, 30–32 (1991) (holding "there is no double-counting of an element of robbery when the State proves pecuniary gain as an aggravating factor").

■ Defendant's challenge to the use of pecuniary gain as an aggravating circumstance is limited to his sentence for armed robbery. Although prior cases discuss challenges to death sentences, the death sentences were based on felony murders involv-

ing armed robberies, and the legal principle is the same. Therefore, we conclude that the trial court did not err in considering pecuniary gain as an aggravating circumstance in determining an armed robbery sentence.

## DISPOSITION

We have considered all issues raised by defendant and the arguments advanced in their support and affirm each of his convictions and sentences.

ZLAKET, C.J., and FELDMAN, MOELLER, and MARTONE, JJ., concur.