NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

REBEKAH LYNN CORWIN, *Appellant*.

No. 1 CA-CR 16-0443
FILED 12-21-2017

Appeal from the Superior Court in Maricopa County
No. CR2011-106624-001
The Honorable Rosa Mroz, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

The Hopkins Law Office, PC, Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

### MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Patricia A. Orozco[1] joined.

**C A M P B E L L**, Judge:

**¶1**　　　　Rebekah Lynn Corwin appeals the superior court's denial of her motion for a new trial. She argues the trial court abused its discretion by improperly deferring to the jury's verdicts. For the reasons explained, we disagree and affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　On the early morning of February 6, 2011, a Scottsdale police officer, Christopher Matthew, responded to a "check vehicle" call. The police had received reports of a white truck parked on the side of Scottsdale Road. Officer Matthew activated his overhead lights and pulled behind the truck, which was, at that time, parked in a lane of traffic. He approached the driver's window which was down and attempted to talk to Corwin. While trying to engage with her, the officer observed three young children in the vehicle, one in the front passenger seat and two in the rear passenger compartment. The children appeared to be asleep. During this encounter, Corwin twice asked to see Officer Matthew's identification. He verbally confirmed he was a police officer, pointed to his badge, and to the emergency lights on his patrol vehicle.

**¶3**　　　　Based on the totality of the circumstances, including the difficulty communicating with Corwin, the time of morning (5:30 a.m.), and the dangerous way the truck was parked, the officer determined it was necessary to check on the children. He instructed Corwin to unlock the doors so he could check the welfare of the children. He attempted to open the door of Corwin's truck to check the welfare of the children. Corwin,

---

[1] The Honorable Patricia A. Orozco, Retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

however, drove forward approximately 100 yards, ignoring the officer's commands to stop, and pulled into a parking lot.

¶4        Officer Matthew followed Corwin and pulled his patrol vehicle behind the truck to execute a second traffic stop, but Corwin started backing her truck towards his patrol vehicle. Corwin then pulled into a bank drive-thru, heading in through the exit. Officer Matthew followed Corwin and, this time exiting his patrol vehicle, again attempted to contact Corwin and instruct her to stop the truck. Instead of complying, Corwin drove the truck directly at Officer Matthew. Officer Matthew pointed his gun at Corwin, to no effect. Corwin accelerated towards him, and he holstered his gun and rushed out of the way. After striking the officer's patrol vehicle, Corwin pulled the truck back onto the road, continued 50 or 60 feet and again stopped in a lane of traffic.

¶5        Officer Matthew called for back-up and Maricopa County deputies responded. Corwin begun driving again, continuing to ignore officers' various attempts to execute a traffic stop. A police chase ensued, which generally took place up and down the same road, and involved officers from different agencies. Finally, officers deployed "stop sticks." The stop sticks flattened at least one of her tires, but Corwin continued driving, crashing through two separate security gates of a residential community.

¶6        Additional stop sticks were deployed disabling the remaining tires on Corwin's truck. Corwin continued to drive on the wheel rims. An officer positioned her large SUV in front of Corwin and attempted to slow the truck down by decelerating in an "S" pattern, blocking the truck from passing. After initially decelerating, Corwin collided with the officer's SUV twice, and then rammed into the back of the SUV, which pushed it off the side of the road. Corwin continued driving down the road, riding only on the vehicle rims with sparks flying.

¶7        Eventually, the truck came to a stop when Corwin drove into a ditch. Corwin got out of the truck and officers attempted to detain her. Corwin would not comply with the officers' commands. A struggle ensued. Corwin continued to kick and flail even after officers deployed a Taser.

¶8        Officers were eventually able to restrain Corwin and transport her to a jail. Upon arrival at the jail, she continued to be combative and officers had to use more restrictive methods of restraint. Officers made three attempts to obtain a blood draw, but were unsuccessful because Corwin struggled the entire time. About three weeks later Corwin

underwent a five-drug panel hair follicle test, which yielded a negative result for drug use.

¶9        The case went to a jury trial, and Corwin presented an affirmative defense of guilty except insane pursuant to Arizona Revised Statutes ("A.R.S.") section 13-502(A) ("A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong). Specifically, she claimed that she had suffered from a brief psychotic episode during the February 6 incident.

¶10        She presented supporting testimony by Dr. DJ Gaughan, a court-appointed psychologist, and Dr. Wayne General, a psychologist, who each separately performed guilty except insane evaluations of Corwin. Both testified that Corwin became delusional two days prior to the February 6 incident, during a gymnastics event she had attended.[2] They further testified her delusions continued throughout the February 6 incident, in which she also experienced disorganized behavior and speech. They opined she had behaved in a confused and erratic manner because her delusions caused her to believe that the officers were not real officers, and she had acted out of fear. Dr. Gaughan and Dr. General both concluded that on February 6, Corwin was suffering from "brief psychotic disorder," a mental disease that met the definition of guilty except insane under A.R.S. § 13-502(A). Additionally, Dr. Gaughan and Dr. Wayne concluded, based on the hair follicle test and lack of history of drug or alcohol abuse, Corwin had not been under the influence of alcohol or drugs. *See* A.R.S. § 13-502(A) (mental disease or defect does not include disorders resulting from voluntary intoxication or withdrawal from alcohol or drugs).

¶11        In contrast, the State presented testimony from its witness Dr. James Youngjohn, a neuropsychologist, who evaluated Corwin four years after the incident. Dr. Youngjohn concluded Corwin had not suffered from brief psychotic disorder on the day of the incident, or any other mental illness that would meet the criteria for guilty except insane pursuant to A.R.S. § 13-502(A). Specifically, he testified that he believed a hair follicle test is not as reliable as a blood draw because it is a less sensitive test. Thus, despite the hair follicle test yielding negative results, he could not rule out

_____

[2] This time period includes February 5, 2011, in which, in Pinal County, Corwin was charged with unlawful flight from a law enforcement vehicle, a non-dangerous offense. Corwin subsequently entered a guilty except insane plea, and the court ordered a stay in the Arizona State Hospital. Corwin was released after 46 days.

that she had suffered from a drug-induced psychotic disorder. He further concluded that although Corwin exhibited some of the diagnostic symptoms of brief psychotic disorder, such as delusions, she did not exhibit others—for example, he did not believe her symptoms lasted more than 24 hours.

¶12          The jury rejected Corwin's affirmative defense and found her guilty of: two counts of aggravated assault, dangerous offenses; two counts of aggravated assault, non-dangerous offenses; one count of unlawful flight from a law enforcement vehicle, a non-dangerous offense; four counts of endangerment, dangerous offenses; and one count of resisting arrest, a non-dangerous offense. The jury also found the State had proven one aggravating circumstance as to counts 2 and 5.

¶13          Corwin moved for a new trial pursuant to Arizona Rule of Criminal Procedure 24.1(c)(1), and argued the jury's verdict—in contrast to a guilty except insane verdict—was contrary to the weight of evidence. At the sentencing hearing the superior court denied the motion, stating:

> So I did read the briefing, and I will tell you that the jury weighed the evidence and apparently they decided to go with Dr. Youngjohn's opinion rather than the other two experts' opinion. And I'm not going to substitute my judgment for the judgment of the jury no matter how sympathetic Ms. Corwin is, and so, unfortunately, I'm going to have to deny the motion for a new trial.

¶14          The court subsequently found several mitigating circumstances, including finding that Corwin had a break with reality, discussed more below. *Infra* ¶ 18. The court then ordered mitigated sentences on each count, to run concurrently, for a total of 7 years of incarceration.

## DISCUSSION

¶15          Corwin asks this court to vacate her convictions and sentences and remand the matter for the trial court to make a new determination on her motion for a new trial. We review the trial court's ruling on a motion for a new trial for an abuse of discretion. *State v. Fischer*, 242 Ariz. 44, 48, ¶ 10 (2017).

¶16          The trial court may grant a new trial when the verdict is "contrary to law or to the weight of evidence." Ariz. R. Crim. P. 24.1(c)(1); *see also Fischer*, 242 Ariz. at 48, ¶ 11. The trial court enjoys "broad" discretion

in exercising its power to rule on a motion for a new trial. *Fischer,* 242 Ariz. at 49, ¶ 14; *see also City of Glendale v. Bradshaw,* 114 Ariz. 236, 238 (1977) (trial court "saw the witnesses, heard the testimony, knew the issues, and had a perspective on the relationship between evidence and verdict [the appellate court] can never achieve by a bare reading of the record"). In exercising its discretion, the trial court should weigh the evidence and make its own witness credibility determinations. *Fischer,* 242 Ariz. at 49-50, 52, ¶¶ 17, 31. "If, after full consideration of the case, the [trial] court is satisfied that the verdict was contrary to the weight of the evidence, it may set the verdict aside, even if substantial evidence supports it." *Id.* at 49-50, ¶ 17 (citations omitted).

¶17 Corwin argues that the trial court's statement that it was "not going to substitute [its] judgment for the judgment of the jury" and its use of the term "unfortunately," *supra* ¶ 13, demonstrates that the trial court misunderstood its power; specifically, the court felt obligated to forgo its own examination of the evidence and to defer to the jury. Here, the court received full briefing on its discretionary power to grant or deny a motion for a new trial. Thus, we presume that the court understood the law in denying the motion for a new trial.[3] *State v. Lee,* 189 Ariz. 608, 616 (1997) ("Trial judges are presumed to know the law and to apply it in making their decisions.") (citations omitted).

¶18 We agree with Corwin that under Arizona law in ruling on a motion for a new trial, the trial judge "sits as a thirteenth juror" and "must be convinced that the weight of the evidence sustains the verdict." *Fischer,* 242 Ariz. at 44, ¶ 14 (citation omitted); *see also Soto v. Sacco,* 242 Ariz. 474, 478, ¶ 8 (2017) (recognizing that "a trial judge plays a role akin to a thirteenth juror . . . when ruling on a motion for new trial") (citations omitted); *State v. Thomas,* 104 Ariz. 408, 412 (1969). But this discretion is

---

[3] Although the State's briefing incorrectly argued that a motion for a new trial should be denied when a jury's findings are supported by "substantial evidence," in Corwin's motion and reply she accurately appraised the court of the law. We note, however, that despite *Fischer's* clear statement that the trial court has discretion to grant a new trial even when a verdict is supported by substantial or sufficient evidence, 242 Ariz. at 49-50, ¶¶ 17-18, 21, in its briefing on appeal the State continues to erroneously argue that a motion for a new trial should be denied when the jury's findings are supported by "substantial evidence." We reject the State's position that we should affirm the trial court's denial on the basis that the verdict was supported by substantial evidence. *See supra* ¶ 16.

limited and the trial court may not set aside a verdict simply because, if acting as the trier of fact, it "would have reached a different result." *Fischer*, 242 Ariz. at 50, ¶ 20. Here, we are convinced that the trial court weighed the evidence and witness credibility, as it was required to do. *Id.* at 52, ¶ 31. This is further evidenced by the court's ruling on mitigating circumstances:

> I've sat through the trial. I've listened to all of the evidence. And while the jury [] did not find that you met the statutory definition of guilty except insane, and I do not know why, what aspect or anything like that [] I do believe that you did have a break with reality for that one day in 2011 from February 5th to February 6th, 2011, that you did have [] a break in reality. Whether that is sufficient to meet the definition of guilty except insane has been determined by the jury, and I am not overruling them, but I have taken that into consideration, all right?

¶19 The court expressly stated that it had taken the psychiatric evidence into consideration and it was within the court's discretion to affirm the jury's verdict, despite its determination that Corwin had a mental break with reality. *See Joy v. Raley*, 24 Ariz. App. 584, 585 (1975) (trial court should not grant a new trial if it concludes the evidence merely balanced on its mental scales); *Fischer*, 242 Ariz. at 50, ¶ 20 ("We are mindful that a judge considering a motion for new trial did not have the benefit of participating in jury deliberations.").

¶20 Accordingly, because we conclude the court acted within its discretionary power, we decline to remand the matter to the trial court to issue a new ruling.

## CONCLUSION

¶21 For the foregoing reasons, we affirm Corwin's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA