NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ROBERT TINGUE, *Appellant.*

No. 1 CA-CR 20-0297
FILED 6-15-2021

Appeal from the Superior Court in Yavapai County
No. P1300CR201800699
The Honorable John David Napper, Judge

**AFFIRMED IN PART; REVERSED AND VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David R. Cole
*Counsel for Appellee*

Law Offices of Gonzales & Poirier, P.L.L.C., Flagstaff
By Antonio J. Gonzales
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

_____

**C R U Z**, Judge:

¶1      Robert Tingue appeals his convictions and sentences for two counts of theft, two counts of first-degree trafficking in stolen property, two counts of criminal damage, and one count of possession of drug paraphernalia.  For the following reasons, we affirm Tingue's convictions and sentences for counts 1-5 and 7 and reverse his conviction and vacate his sentence for count 6.

## FACTUAL AND PROCEDURAL HISTORY

¶2      In September 2017, Arizona Department of Transportation ("ADOT") workers conducting an inspection of traffic lights in Prescott Valley discovered multiple pole boxes with their lids off and a total of 15,440 feet of copper wire missing from the boxes.  Remnants of cut wire, screwdrivers, and wire cutters were left on the ground.  The total amount of financial harm to ADOT for the theft was $11,772.72, which included the cost of repair and $7,778.50 for parts.

¶3      In November 2017, ADOT workers found more pole boxes open with a total of 4,879 feet of copper wire missing.  The damage in November was "[p]retty much the same as the first scenario," with pole boxes "ripped apart" and their lids "thrown everywhere or missing."  The workers observed a suspicious vehicle, a small blue pickup truck driving on the shoulder of the road and gave police the license plate number.  ADOT paid $3,663.32 in repair costs following the November theft.  This amount did not include the cost for replacement wire.  The total loss for the November incident was approximately $18,000.

¶4      Upon investigation, police discovered that Tingue sold 6,000 feet of copper wire at a scrap yard in September 2017.  Tingue had driven the blue pickup truck, which belonged to his neighbor, Kenny Wade, to the scrap yard.  Twice in early 2018, Tingue asked Wade and Wade's fiancé, Jennifer Wright, to sell copper wire for him in Phoenix.  They each did so once and Tingue paid them.  When contacted by police, Wade told them

Tingue had used his truck to steal copper wire. Wade and Wright each pleaded guilty to theft charges based on their sale of copper wire for Tingue.

¶5        Police contacted Tingue at his residence and he consented to a search. Police found two meth pipes in Tingue's room.

¶6        The State charged Tingue with two counts of theft, class 3 felonies (counts 1 and 4); two counts of criminal damage, class 4 felonies (counts 2 and 5); two counts of first-degree trafficking in stolen property, class 2 felonies (counts 3 and 6); and one count of possession of drug paraphernalia, a class 6 felony (count 7). The State filed an allegation of aggravating circumstances and an allegation of prior felony convictions.

¶7        At trial, Tingue moved for directed verdicts of acquittal on all counts except count 7. *See* Ariz. R. Crim. P. ("Rule") 20(a)(1). The superior court denied the motion, and a jury convicted Tingue as charged. The jury was not asked to determine whether there were any aggravating factors.

¶8        Later, at a bench trial on Tingue's prior convictions, the superior court found that Tingue had two prior historical felony convictions after he stipulated to the convictions. A few months later, the superior court sentenced Tingue as a category three repetitive offender to a slightly aggravated sentence of 15.75 years in prison for count 1 and to presumptive sentences for counts 2-7. The court ordered Tingue to serve counts 1 through 6 concurrently with count 7 to be served consecutive to counts 1-6. Tingue timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, -4033(A).

**DISCUSSION**

I.      Sentence for Count 1

¶9        Tingue first argues the superior court erred by sentencing him to a "slightly aggravated" sentence for count 1. He agrees that the court did not err by sentencing him as a category three repetitive offender pursuant to A.R.S. § 13-703(C) based on the two prior historical felony convictions found by the court, but argues the court erred by not making findings of fact about the aggravating factors.

¶10        Because Tingue did not object to the sentence in the superior court, we review for fundamental error. *See State v. Allen*, 248 Ariz. 352, 367, ¶ 58 (2020). To establish fundamental error, a defendant must first prove that the superior court erred. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21

(2018). Next, the defendant must show that such error (1) went to the foundation of the case, (2) took from the defendant a right essential to his defense, or (3) was so egregious that the defendant could not possibly have received a fair trial. *Id.* "If the defendant establishes fundamental error under prongs one or two, he must make a separate showing of prejudice, which . . . involves a fact-intensive inquiry." *Id.* (citation and internal quotation marks omitted).

¶11 The superior court sentenced Tingue to 15.75 years in prison for count 1, a class 3 non-dangerous felony pursuant to A.R.S. § 13-703(C), (J). The sentence fell between the presumptive sentence of 11.25 years and the maximum sentence of 20 years. *See* A.R.S. § 13-703(J) (presumptive sentence is 11.25 years, maximum sentence is 20 years, and aggravated sentence is 25 years). Even though the court did not state at sentencing that it was using Tingue's prior convictions to slightly aggravate count 1, the court did find the existence of two prior convictions, beyond a reasonable doubt, at the earlier hearing on priors. Tingue stipulated to the prior convictions, which both occurred within ten years of the date Tingue committed count 1. A prior conviction within the previous ten years is a statutory aggravating circumstance, and the superior court, not the jury, "shall determine" such an aggravating circumstance. A.R.S. § 13-701(D)(11). The superior court may use prior convictions to both enhance and aggravate a sentence. *State v. Bonfiglio*, 231 Ariz. 371, 374, ¶ 11 (2013); *State v. LeMaster*, 137 Ariz. 159, 166 (App. 1983) ("[D]ouble punishment principles do not preclude the trial court from using the prior conviction to impose an enhanced sentence . . . and to find aggravating circumstances.") (citations omitted).

¶12 Although A.R.S. § 13-701(C) requires the superior court to set forth factual findings supporting aggravating circumstances "on the record at the time of sentencing," the court is not required to "recite a 'specific litany' or make 'formal findings or conclusions.'" *Bonfiglio*, 231 Ariz. at 374, ¶ 12 (citing *State v. Harrison*, 195 Ariz. 1, 3-4, ¶¶ 6, 12 (1999)). "Although findings of fact and conclusions of law are certainly helpful on appellate review, they do not go to the foundation of the case or deprive a party of a fair hearing." *Trantor v. Fredrikson*, 179 Ariz. 299, 300-01 (1994).

¶13 The record here indicates that Tingue stipulated to two historical prior felony convictions thereby providing one permissible aggravator under A.R.S. § 13-701(D)(11). The court did not impose the aggravated sentence for count 1 but instead imposed a sentence greater than the presumptive but less than the maximum, a "slightly aggravated" sentence. Therefore, only one aggravator was required. *See* A.R.S. § 13-

701(C) (court may impose the maximum term pursuant to A.R.S. § 13-703 if one or more aggravating circumstances are found to be true beyond a reasonable doubt). Because Tingue's sentence for count 1 was within the authorized statutory range once the court found two prior felony convictions, there was no error in imposing a sentence greater than the presumptive but less than the maximum sentence.

¶14 Even if the superior court erred by not stating on the record during the sentencing hearing that it was giving Tingue a slightly aggravated sentence for count 1 based on his prior convictions, Tingue has not carried his burden of establishing the error was fundamental and that he was prejudiced. Besides stipulating to two prior felony convictions at the priors' trial, at sentencing, after the State argued for a slightly aggravated term in light of Tingue's historical prior felony convictions, defense counsel stated, "Your Honor, I'm not going to give you an outline about the aggravating factors. They are clear to the court . . . ." Tingue was thus well aware that his previously-found historical prior felony convictions could be used as an aggravating factor. *See LeMaster*, 137 Ariz. at 166. Finally, we note that it is clear from the record that the superior court's intent was to impose a total sentence of 15.75 years for counts 1-6. Because Tingue was sentenced to a presumptive sentence of 15.75 years for count 3 and the court ordered counts 1-6 to run concurrently, Tingue was not prejudiced by the slightly aggravated sentence of 15.75 years for count 1.

## II. Sufficiency of the Evidence and Motion for Judgment of Acquittal

¶15 Tingue next argues insufficient evidence supported his convictions for counts 2, 4, 5, and 6. He also argues the superior court erred by denying his Rule 20 motion for judgment of acquittal on those counts.

¶16 The same standard of review applies to both claims. *State v. West*, 226 Ariz. 559, 562, ¶¶ 14-15 (2011). Viewing the evidence in the light most favorable to sustaining the convictions, we review de novo whether substantial evidence supported them. *Id.* at ¶¶ 14-16. The relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (citation and internal quotation marks omitted). In determining whether substantial evidence supports a conviction we consider both direct and circumstantial evidence. *Id.* at ¶ 16. We will not reweigh the evidence and we resolve all reasonable inferences against the defendant. *State v. Lee*, 189 Ariz. 608, 615 (1997). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the

conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987). Stated differently, "[r]eversible error based on insufficiency of the evidence occurs only whe[n] there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (citation omitted). We will not assess the credibility of witnesses because it is "for the jury to weigh the evidence and determine the credibility of the witnesses." *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004).

### A.  Count 2

**¶17**  In count 2, the State charged Tingue with recklessly defacing or damaging multiple pole boxes causing damage in the amount of $10,000 or more, on or between September 1 and 5, 2017, a class 4 felony. *See* A.R.S. § 13-1602(A)(1), (B)(1) ("Criminal damage is a class 4 felony if the person recklessly damages property of another in an amount of ten thousand dollars or more."). Tingue argues the evidence did not show that any of the pole boxes inspected on September 7 were damaged or that he was the one who caused the damage. He also argues there was insufficient evidence that the property damaged was in an amount of $10,000 or more. We disagree.

**¶18**  ADOT worker Timothy Collins testified that, on September 7, 2017, he and a coworker were conducting an inspection and found forty or more damaged pole boxes with copper wire removed from each box. They saw remnants of copper wire and screwdrivers and wire cutters near the boxes. Collins testified that the total "cost of the damage" was $11,772.72, which included "labor for the damage" in addition to the cost for parts, including replacement wire. Collins testified that the wire had to have been taken within two or three days before the September 7 inspection. On September 5 Tingue sold copper wire at a scrapyard. On this record, substantial evidence existed for the jury to reasonably conclude that Tingue committed criminal damage in an amount of $10,000 or more between September 1 and 5, 2017.

### B.  Count 4

**¶19**  In count 4, the State charged that Tingue committed theft by knowingly and without lawful authority controlling ADOT's copper wire valued at more than $4,000 and less than $25,000 between November 1 and November 13, 2017, a class 3 felony. *See* A.R.S. § 13-1802(A)(7), (G) ("Theft of property or services with a value of four thousand dollars or more but less than twenty-five thousand dollars is a class 3 felony.").

¶20 Tingue argues the evidence of the November 2017 theft was weaker than the evidence of the September 2017 theft, because unlike the September theft there was no evidence that he, Wade, or Wright sold copper wire in November 2017. Even though the record showed that Wade and Wright did not sell copper wire for Tingue until January 2018, there was still sufficient circumstantial evidence from which the jury could conclude Tingue committed the November 2017 theft. Wade's truck, which Tingue was allowed to use, was seen driving suspiciously in the area where the theft occurred, starting and stopping at pole boxes. Although Wade and Wright also both drove Wade's truck, they maintained their only involvement in the theft was selling the wire for Tingue. The jury could conclude, by a process of elimination, that Tingue was driving the truck at the time of the theft. In addition, Collins testified that the total loss from the November 2017 incident was $18,000, including $3,663.32 for labor.

### C. Count 5

¶21 In count 5, the State charged Tingue with recklessly defacing or damaging multiple pole boxes causing damage in the amount of $10,000 or more, on or between November 1 and 13, 2017, a class 4 felony. *See* A.R.S. § 13-1602(A)(1), (B)(1).

¶22 The State concedes the evidence does not show that Tingue caused damage in an amount of $10,000 or more in November 2017 because "Collins testified that the total loss from the November theft was $3,663.32." There was sufficient evidence, including the evidence cited *supra* paragraph 20, that Tingue recklessly caused damage greater than $10,000 to the pole boxes in November, however. Although Collins testified that the cost of the repairs to the pole boxes in November was $3,663.32, he testified that that amount did not include parts and was only a portion of a total loss of $18,000. Resolving all reasonable inferences against Tingue, the evidence supports the jury's verdict.

### D. Count 6

¶23 In count 6, the State charged Tingue with knowingly organizing, planning, financing, directing, managing, or supervising the theft and trafficking of ADOT's stolen copper wire on or between November 1 and 30, 2017, a class 2 felony.

¶24 Tingue argues there was insufficient evidence that he trafficked ADOT's property in November 2017. We agree. Although Wright testified that at some point in 2017 or early 2018, Tingue took Wade's truck and returned the next morning with a truckload of copper

wire, she testified that Tingue asked her and Wade to sell the wire when they "were getting ready to go to the scrap yard in Phoenix . . . in January and February of 2018." Wade and Wright received $200 for each sale, and Tingue paid them a small percentage of those amounts. Wade also testified that he sold copper wire for Tingue, and had assumed it was stolen, but did not testify as to when the sales occurred. Sergeant Lopez testified that when he interviewed Wade in May 2018, Wade admitted selling copper wire for Tingue but did not testify about when the sale occurred. There were no tickets or documentation of Wright's and Wade's sales entered into evidence. The State cites to no evidence that Wright and Wade sold wire for Tingue in November 2017, and we have not found any in the record. Because there was insufficient evidence to support Tingue's conviction for count 6 we reverse the conviction.

## CONCLUSION

¶25 For the foregoing reasons, we affirm Tingue's convictions and sentences for counts 1-5 and 7 and reverse his conviction and vacate his sentence for count 6.



AMY M. WOOD • Clerk of the Court
FILED: AA